GATHINGS *et al. v.* HOWARD *et al.*

[84 South. 240. In Banc. No. 21052.]

1. WILLS. *Instruction that proponents may rest on general legal presumption of sanity immaterial, where they are entitled to peremptory instruction.*

   If the proponents on the trial of a contested will case are entitled to a peremptory instruction on the issue of testamentary capacity, an instruction that they have the right to rest upon the general presumption that every man is presumed to be sane until the contrary appears by evidence is immaterial.

2. WILLS. *Presumption of sanity does not relieve proponents from making prima facie case of capacity.*

   While every human being is presumed to be of sound mind in the absence of evidence to the contrary, the existence of this legal presumption does not relieve proponents of a will on the trial of an issue devisavit vel non of the necessity of making out a *prima-facie* case by proof of testamentary capacity.

3. WILLS. *Burden of proof on proponents as to capacity and undue influence.*

   While the burden of proof is upon the proponents of a will on an issue *devisavit vel non*, both as to testamentary capacity and

undue influence, they make out a *prima-facie* case by the intro-
duction of the record of probate in common form. The con-
testants must then overcome the *prima-facie* case by testimony,
with the privilege in proponents to offer rebuttal testimony.

4. WILLS. *Instruction as to burden of proof of capacity held errone-
ous.*

Upon the trial of a contested will case, when the issues were both
testamentary capacity and undue influence, it was error to grant
proponents an instruction that, while the burden of proof was
upon the proponents, yet the law presumes every man sane until
the contrary is shown by the evidence and upon this legal pre-
sumption the proponents may rest their case until it is over-
come by some evidence showing the insanity of the testator.

5. WILLS. *Sound and disposing mind of testator essential.*
The right to execute a will is statutory, and it is a condition
precedent under our statute (section 3366, Hemingway's Code)
that the testator be of "sound and disposing mind."

6. WILLS. *After great lapse of time presumption in favor of wills.*
After a great lapse of time presumptions, under some circum-
stances may be allowed in favor of wills regular on their face.

7. WILLS. *Degree of proof that will is free act of competent mind
within court's conscience.*
The object in all cases is to show that the will offered for probate
is the free act of a competent mind, and the degree of proof
must be left largely to the conscience of the court in any given
case.

8. WILLS. *Evidence held insufficient to show illicit relations as ele-
ment of undue influence.*
Upon the trial of a contested will case, where one issue is the al-
leged undue influence exerted by a negro woman servant and
beneficiary in the will, testimony of a witness that on one oc-
casion he spent the night with testator and heard voices in tes-
tator's bedroom, and the voice sounded like the voice of the
said woman, and there is no positive or direct testimony of
any illicit relation, proof of sexual intercourse is entirely in-
sufficient.

9. WILLS. *Evidence held to sustain finding of capacity and absence
of undue influence.*
Testimony in the case examined, and the proof found very strong,
both as to testamentary capacity and the absence of any undue
influence.

10. WILLS. *Motive of testator immaterial.*
     A person of sound mind may execute a will from any sort of motive satisfactory to him, whether that motive be love, affection, gratitude, partiality, prejudice, or even a whim or caprice.

11. WILLS. *"Undue influence" defined.*
     Influence, in a legal sense, is undue only when it introduces a transaction which injures some one materially, or which is intrinsically unfair or unconscientious.

12. WILLS. *Bequests to aged negro servant and beloved friend by aged widower without children held not unnatural.*
     The provisions of the will of an aged widower without children, devising the bulk of his estate to an aged and faithful negro servant and a beloved friend and neighbor who ministered to the needs of the testator in his declining years and last illness, are entirely consistent with feelings of gratitude, and a verdict by the jury establishing the will shall not be set aside on any contention that the will is unnatural.

13. EVIDENCE. *Nonexpert witness may testify as to testator's soundness of mind.*
     Nonexpert witnesses who are in position to know and observe the facts and circumstances may state their opinion based on facts, that the testator was of sound mind.

APPEAL from the chancery court of Monroe county.
HON. A. J. McINTYRE, Chancellor.

Suit by Mrs. Georgia Gathings and others against Roxie Howard and others to contest a will. From a decree establishing the will, contestants appeal. Affirmed.

*Leftwich & Tubb,* for appellant.

Nothing is better established in Mississippi than the proposition, that before a non-expert can give evidence as to the sanity of a defendant in a criminal case where insanity is pleaded or of the capacity of a testator to execute a will, that before giving his opinion he must give a statement of facts on which he bases his opinion and he must also show that he had such an acquaintance and familarity with the habits of mind, the behavior of

deceased at the time of the execution of a will as to make such opinions valuable. *Wood* v. *State,* 58 Miss. 741; *Reed* v. *State,* 62 Miss. 405; 40 Cyc., 1038; 1 Alexander on Wills, 383, 384, 385.

Some authorities draw a distinction between the opinions of witnesses to the execution of the will and those of strangers, but the best reasoned cases state that the opinions of witnesses to the will are not entitled to special consideration or prominence, merely because they are witnesses to the will. The value of their evidence is exactly the same as that of any other witness of equal intelligence. (See opinion of Judge FREEMAN in the following annotated cases): Crandall's Appeal, 38 Am. St. Rep. 375; Howard's Will, 17 Am. Dec. 60.

We submit that this vast volume of non-expert testimony given without the required qualifications over the objections of the appellants was reversible error. Some of these witnesses in their opinions of the soundness of mind of J. P. Gathings invaded the province of the jury and usurped their function. This is error and should cause reversal. *Miller* v. *Whittington,* 80 So. 499; *Leinhoff & Strauss* v. *Brinker,* 62 Miss. 255. The testimony as to Mr. Gathings' intentions is perfectly competent and was unobjected to. *Sheehan* v. *Kerney,* 82 Miss. 688.

In order to be more or less logical in presenting the errors in granting the charges to the appellees we will deal first with charge 8 granted the appellees found at pages 26 and 27 of the record, which for convenience is here quoted: "The court instructs the jury for the proponents, Mrs. Tom Montgomery, J. M. Higgason and Roxie Howard, that while it is true that the burden of proving that the alleged testator, J. P. Gathings, deceased, was of sound and disposing mind, and at the same time, the making and the executing of the instrument of writing, presented for probate herein, is on the proponents, yet the law presumes that every man is

sane until the contrary appears by evidence, and upon this legal presumption of sanity, the proponents have the right to rest until it is overcome by some evidence showing the insanity of the alleged testator at the time of alleged making and execution of the said instrument of writing.''

In this charge the proponents of the will invoke presumptions of law in their favor when they ignored all presumptions as we assume they had a right to do and instead of introducing the probate of the will with the decree sustaining it granted in common form, and resting their case they introduced all of their testimony; when the proponents thus took a lead and introduced witnesses and refused to stand on a *prima-facie* case made by probate of the will in common form, all presumptions vanished. In the state of this record with the testimony at variance *pro* and *con* every point as it was, we submit, it was reversible error to load down the case with the charge granted by the court telling the jury that presumptions were in favor of the will. Our court has time and again held that in the trial of the issue of *devisavit vel non* raising the question of undue influence and of the capacity of the testator to make a will, there is no place for presumption and there are no presumptions of law in favor of the sanity of the testator and in favor of the absence of undue influence where there is evidence *pro* and *con* on both issues. *Payne* v. *Bank*, 32 Miss 292; *Hitt* v. *Terry*, 92 Miss. 704; *Sheehan* v. *Kerney*, 82 Miss. 688; *Meek* v. *Perry*, 36 Miss. 190; *Hitt* v. *Terry*, 72 Miss. 204; *Coffin* v. *Coffin*, 80 Am. Dec. 238; Redman's Appeal, 21 Am. St. Rep. 85, and extended note; *Montague* v. *Allen*, 48 Am. Rep. 384; *Bancroft* v. *Otis*, 24 Am. St. Rep. 904; *Jamison* v. *Jamison*, 69 Miss. 288, 40 Cyc., 1038.

For convenience at this particular juncture of the' argument about what we have stated about the presumption of undue influence arising out of the peculiar rela-

tions of these two beneficiaries, makes plain the error committed by the lower court in granting such charge to the appellees which is here copied: ''The court charges the jury that J. P. Gathings, an unmarried man, had the right by last will and testament to give his property to his faithful friend and servant, and if influenced by feelings of gratitude to a friend and of doing justice to a faithful servant he gave most of his property to them, leaving only small legacies to his next of kin, this was not unlawful or fraudulent, and if they believe the will was freely and voluntarily executed, the jury will return a verdict for Mack Higgason and others.''

The damaging effect of this charge read in the light of the record must be plain, but the court tells the jury that Mr. Gathings ''had a right, by his last will and testament, to give his property to his faithful friend and servant, and if influenced by feelings of gratitude to a friend and of doing justice to a faithful servant, he gave most of his property to them, etc.,'' then the will was lawful. Here the court badges the appellees and the chief beneficiary of the will, one being a negro servant of the house and the other being a neighbor, not related by blood or marriage, as his faithful friend and servant, meaning of course, that Mr. Higgason was the faithful friend and Roxie Howard, the faithful servant. This was the question in controversy whether or not these appellees were the recipients, of the uninfluenced favors of Mr. Gathings, or whether by undue influence and persuasion, they overcame the free will and got the property that should have gone to his next of kin. This was plainly error and like error is found written in many of the other charges which we will refer to later. It can't be true that this jury remained unhampered in considering the right of appellants when Mr. Higgason and Roxie Howard were characterized by the court in plain terms as ''the faithful friend and servant of Mr.

Gathings.'' These badges of favor given them by the court was sufficient to turn the scale in any close case.

Charge 10 granted the appellees about the relations of J. P. Gathings to Roxie Howard for convenience is copied here: "The court instructs the jury for the proponents J. M. Higgason, Mrs. Tom Montgomery, and Roxie Howard, that even though you may believe from the evidence in the case that J. P. Gathings, deceased, may have had unlawful intercourse with Roxie Howard, that of itself, however immoral such relations may be, is not sufficient to invalidate the will made in favor of the alleged wrongdoer, and other proponents, if no improper influences are shown to have been exerted to have induced the making of the will.''

We submit that this charge is not only on the weight of evidence but is erroneous in attempting to deal with the facts and limit the weight the jury should give to what this record shows. When a person lives in illicit sexual relations with another, transfers of valuable property to the other in exclusion of the natural objects of his bounty and in exclusion of his next of blood kin the transaction must be viewed by the court with the utmost suspicion and the burden rests on the donee or beneficiary of the will to show the transaction was the result of free volition. *Shipmen* v. *Furness,* 69 Ala. 555; *Leighton* v. *Orr,* 44 Iowa, 678; Richmond's Appeal and Extended note, 21 Am. St. Rep. 85, pp. 100 and 103; *Small* v. *Small,* 16 Am. Dec. 263, and extended note; *Hitt* v. *Terry,* 92 Miss., 704; *Jimison* v. *Jimison,* 96 Miss. 288.

From the note by Judge FREEMAN in Richmond's Appeal, *supra,* page 103, we quote as follows: "Where a person living in illicit sexual relations with another transfers to such person valuable property, especially when the donor in making the gift, excludes natural objects of his bounty, the transaction will be viewed with

the utmost suspicion and the burden of proof rests on the donee to show that the transaction was the result of free volition, and not superinduced by undue influence. *Shipman* v. *Furniss*, 69 Ala. 55; *Legislaton* v. *Orr*, 44 Iowa, 679.'' This shows that the strong language used in the above observation ''utmost suspicion'' is taken from eminent authority. Viewed now in the light of this rule and of the facts of the record we submit that giving charge 10 for the proponents below was reversible error.

We submit to the court that charge 7 granted the proponents of the will in enumerating concrete requirements necessary to sustain the will, committed the common error in such concrete charge in not stating all of the requirements. *Godfrey* v. *Railroad*, 101 Miss. 565; *Mahaffy* v. *Russell*, 100 Miss. 122; *Bank* v. *Hulsey*, 112 Miss. 632.

Charge 8 on presumptions is not only error in principle but is in conflict with charges 2 and 5 for the contestants. Charges 2 and 5 for the contestants, tell the jury that the burden of proof is on the proponents of the will and they must make out satisfactorily every element of it and that if the evidence is evenly balanced the contestants must prevail; and charge 8 for the proponents tells the jury that the law presumes the testator sane until the contrary appears and that the proponents have the right to rest on this presumption until it is overcome by some evidence showing the insanity of the alleged testator at the time of the date of the alleged execution of writing. These charges are in conflict and can't stand together.

It must be plain that no jury would have rendered the verdict they did unless the result was brought about by the erroneous admission of testimony for the defendants below and the erroneous charges granted them.

*Paine & Paine,* for appellee.

It is said that an old practitioner advised a young lawyer, that if the facts in the case were against him to argue the law, but if the law was against him, to argue the facts. Counsel for appellants are not unmindful of this advice, since they omit in their brief any discussion of the facts but argue the law, not concretely but abstractly. They divide their argument into two heads, principally; first, the natural obligation which rests upon every one to take care of his own, that blood is thicker than water, etc., and second, the poverty and want of contestants.

In reply to the first line of argument, we submit that if the testator was sane when he signed the will, then the testator had the legal right to will his property for either love, gratitude, partiality, whim or caprice. See *Burnett, et al.* v. *Smith,* 93 Miss. 566; *Gillis, et al.* v. *Smith, et al.,* 114 Miss. 665. The testimony for the proponents evidences the fact that Higgason had been the close, personal friend of Gathings for many years.

As to the second line of argument used by counsel as to the poverty and want of the contestants, we submit in reply that no sane man with the most primitive conception of his duty to a friend and faithful servant, would have, under the evidence in this case devised his property in preference to Higgason and Roxie Howard. Consider the conduct of the main witness and contestant, Mrs. Georgia A. Gathings; she deserted and abandoned testator many years ago; married and moved to the State of Arkansas. Her love for her husband was greater than her love for her testator. Testator doubtless keenly felt this conduct of Mrs. Gathings, and it was nothing but right that he refused to remember her in any amount other than that set out in the will. The jury however, trying the case saw and heard all the witnesses and was doubtless moved to tears by the pathetic

appeal by counsel for the contestants both on the ground of poverty and blood relations but the jury by their solemn verdict upheld the will, and hence under the law as announced in the case of *Jamison* v. *Jamison,* 96 Miss. 300, their verdict should not be set aside unless it is shown to be wrong most convincingly and indubitably.

In reply to the argument of counsel for appellant that the court erred in permitting the witnesses of appellees to testify as to the sanity of testator; we submit that a complete answer to this argument is given by reading our abstract of the testimony or by reading the record. Every witness was qualified legally to express his opinion and no other answer is necessary; we simply say, read the abstract of the record.

As to the second proposition made by counsel for appellants in section 7, page 3 of their brief, we say: there was no error committed by the court in permitting Carlisle to testify as to the good character of Higgason under all the facts in the case. But even though this court should hold that it was error, yet the appellants could not have been prejudiced thereby and the case cannot be reversed because of Rule 11 of this court. We submit that appellants could not have been injured by admitting this evidence for this reason; there is absolutely no testimony in the record nor any circumstances from which it could be inferred that J. M. Higgason used any undue influence upon testator to cause him to make Higgason a beneficiary under the will. The record shows conclusively by the great weight of the testimony that testator was sane when he executed the will, and the issue as to testator's sanity could not have been affected by the character of Higgason; if testator was insane then there was no will regardless of whether Higgason had a good or bad character.

Therefore the question as to whether Higgason's reputation was good or bad could not have affected the jury on either issue. The only person against whom

any evidence.was offered even slightly tending to show undue influence was Roxie Howard, and the question as to whether J. M. Higgason had a good or bad character could not possibly have effected the trial of that issue in the minds of the jury. So the admission of this evidence could not possibly be prejudicial error so as to cause a reversal of the case.

In section 9 of counsel's brief, they discuss charge No. 8 given appellees and insist that the giving of this charge was reversible error as invoking the presumption of sanity of the testator. In reply we quote from the case of *Hitt* v. *Terry*, 92 Miss. 704, as follows: "The second instruction for the contestant is criticized with respect to its statement as to the burden of proof on these issues; but besides the fact that there was no formal order of probate in the case, it is sufficient to say that all the instructions on both sides with respect to presumptions of one kind of the other were wholly irrelevant in the case since there was the fullest proof offered by both the proponents and the contestants on both the issues involved. That being so, presumptions were of no value to one side or the other and we could not reverse for any error instructions on either side as to mere presumptions when the record discloses full proof on both issues."

Section 11 of counsel's brief is an attack upon charge 9 of appellee's, for the reason, assigned, that the charge denominates Higgason and Roxie Howard as the faithful friend and servant. We submit this could not be prejudicial error. It was proven and admitted that Higgason was a faithful friend and Roxie an attentive servant, appellants being forced through their witnesses to admit that the Roxie was a faithful servant. There can be no possible legal objection to the charge except possibly to the use of the phrase "faithful friend and servant" and the testimony is overwhelming of the faithfulness of the friend and loyalty of the servant.

Section 11 counsel insist that the giving of charge 10 was reversible error. This charge was taken *verbatim* from Hughes' Instructions to Juries, page 745, sec. 705, and is supported by reputable authority. See *Dickle* v. *Trotter,* 2 Ill. 388; *Eckert* v. *Flowry,* 43 Pa. State, 46. In the first place appellants failed to show that Roxie Howard and testator were guilty of unlawful sexual intercourse, and in the second place if they had been guilty of unlawful intercourse, it does not follow that the woman would have had any influence on testator and certainly it does not follow that the influence, if any, would have been undue.

We therefore respectfully submit that the case should be affirmed.

*W. H. Clifton,* for appellees.

It isn't often the learned counsel puts up a man of straw to knock down, but the witnesses here were so clearly qualified under the rule that they invoked, we think them guilty of this soft impeachment. The facts as shown by this testimony on which the opinion of these non-experts is based, are, to wit: having frequent conversations with him; almost daily attending to his usual business and in a few instances having business tranactions with him, through a period of from four to thirty years; affording "such an acquaintance and opportunity for observation as made the opinion valuable." This meets every requirement of the Rule in Mississippi as shown by the cases cited by the appellants. *Wood* v. *State,* 58 Miss. 741; *Reed* v. *State,* 62 Miss 405.

It is this opportunity to know and observe the testator at the very time the will is executed that makes the opinion of the witnesses to the will more valuable than the opinion of other witnesses, provided the witnesses improved that opportunity. *King* v. *Rowan,* 82 Miss. 12-15.

The good character of Mack Higgason testified to by W. H. Carlisle was not incompetent, for the reason that Higgason's character had been put in issue in the case. The instant case is like the woman sueing for seduction or an action of slander where good character is put in issue in the case. Just as here the "particular importance" of this issue arises out of the character of the suit, involves a general charge of designedly and basely exercising undue influence through means of a false sham friendship; and goes directly to affect his character.

The general rule is recognized in the *Leinkauf-Brinker case* from which I quote, citing 1 Greenleaf, Evidence, sec. 54, our court says, on page 257: "Where after stating that in civil cases such evidence is not admitted unless the nature of the action involves the general character of the party or goes directly to affect it." Mr. Greenleaf adds: "That the testimony is admissible generally in actions of tort, etc."

And it is only when Mr. Greenleaf attempted to apply it to all actions of torts, does our court dissent, for on page 259 they say: "If the general conduct of the party is put in issue, then proof of his general character, as distinguished from particular acts, is admissible." The cessation of friendly intercourse is a good reason for disinheriting a relative. *Buckhart* v. *Gladish*, 24 N. E. 118, 120 (Ind.); *Frezevant* v. *Raines*, 19 S. W. 567 (Texas); *Mullens* v. *Cottrell*, 41 Miss. 291.

Take these causes for estrangement between the testator and his niece and grand-nephew, and the subsequent neglect by them when he was really suffering for want of attention and it was not unnatural for him to remember those who filled their places. Undue influence: "there can be no undue influence unless it be such as to take away the free agency of the testator, and the jury has found that such was not the case." A man of a sound mind may make a deed or will from

any motive satisfactory to himself, whether that motive be friendship, gratitude or even whim, caprice or prejudice.

Under the circumstances of this case, we think it was altogether reasonable and natural for the testator to have given most of his property to his friend and faithful servant when his next of kin was a niece and a couple of nephews; and no presumption of undue influence or lack of free agency can be presumed from such an act of friendship and gratitude for past services. Excerpts from *Burnett* v. *Smith*, 93 Miss. 566, 572, 47 So. 117; 8 Words and Phrases, p. 7166, 20 Am. & Eng. Ency., p. 105.

There being no element of fraud and no relationship proved, this transaction can only be looked to as a circumstance in connection with all the evidence by the jury to determine whether the testator was sane or acted as a free agent in making the will or not.

There being no relationship of trust and confidence between parties, presumptions have no place in this case either on the issue of undue influence or sanity, for the case was tried fully on the facts; the jury having settled all these facts in favor of the proponents of the will.

As to the criticism now on the charges given to proponents, counsel does not contend on pages 10 and 11 of his brief that charge No. 8 as an abstract proposition of law was wrong, but it was error as applied to the case at bar, and he cites the case of *Hitt* v. *Terry*, 92 Miss. 704, in support of such contention.

We submit that the facts show as in the Hitt case that the testimony in support of the verdict in this, the case at bar is most ample on either issue submitted to the jury, and if this be true, then this criticism on charge No. 8, is fully and finally answered by the court in the Hitt case which he himself invokes, in the following language: "Presumptions were of no value to one side or the other,

and we could not reverse for an error in instructions on either side as to mere presumptions: when the record discloses full proof on both issues." P. 704.

Even if the case belonged to the class where the testimony would support a verdict for either side as counsel indirectly contends, still under the settled rule of this court "that the verdict of the jury will not be set aside unless manifestly wrong" error in charges on presumptions could not be considered because only harmless error. Paragraph 10.

Contrary to this contention is the strange announcement that this court should presume undue influence from conclusions and assumptions reached *arguendo;* and therefore the peremptory charge asked by contestants should be given. See Appellant's brief. Respectfully submitted.

STEVENS, J., delivered the opinion of the court.

Appellants are the next of kin and the heirs of J. P. Gathings, deceased, and are the contestants in this proceeding instituted in the chancery court of Monroe county to contest the last will and testament of the said deceased and to annul the preliminary probate thereof. Appellees are the beneficiaries of the will. The testator at the time of his death was a widower without children. The document purporting to be last will and testament is in the handwriting of W. H. Clifton, an attorney of Aberdeen, is in due form, signed by the testator and witnessed by E. P. Poe and Chas. Shappard. It bears date March 31, 1915, and was filed for probate in July, 1918. It appears that the testator died in April, 1918, a little more than three years after the execution of the will. By the will specific legacies are left to Mrs. J. M. Gathings, a niece, and J. P. and Fred Jones, grandnephews, of two hundred fifty dollars each. And, in the language of the will:

122 Miss.—24.

"To my faithful servant Roxie Howard for her faithful attendance on me during all these years of my life, the sum of one thousand dollars. These legacies to be paid out of moneys I may have on hand at the time of my death."

Then follows a devise to Roxie Howard of the homestead and certain personal property, live stock, and supplies, and after the legacies and devises specified are paid—"to my friend J. M. Higgason, all of the balance or residue of my estate, real, personal and mixed, including all live stock, moneys, bonds, notes and choses in action not specifically devised herein."

Higgason was named the executor.

The bill filed by the next of kin, in substance, charges that the alleged will is the product of undue influence exerted by Roxie Howard, a negro woman, and J. M. Higgason, a bachelor, neighbor, and friend; and, by an amendment that the testator was not of sound mind and disposing memory at the time the alleged will was executed. The issues, properly joined, were submitted to a jury, who found for the proponents, and from the decree establishing the will this appeal is prosecuted.

Upon the trial of the issue *devisavit* there was much testimony introduced on behalf of proponents and contestants and many instructions granted by the court for both sides. There are more than twenty assignments of error relied upon by appellants. A discussion of the points attempted to be raised by most of these assignments would not only lead to a detailed statement of all of the facts in the case, but would add nothing to the jurisprudence of the state. We shall therefore address our remarks to only one or two propositions that merit discussion. We must, however, advert to the facts in a general way, as a proper appreciation of the facts will dispose of one of the main issues in the case.

The bill charges mental incapacity, and this issue was submitted to the jury. The court refused an instruction

asked by the proponents peremptorily charging the jury
that Mr. Gathings was of sound and disposing mind.
We desire to say in the outset that the testimony, in our
judgment, is overwhelming in favor of the proponents
on this issue, and in fact that the testimony as a whole is
insufficient to raise any real doubt of testamentary ca-
pacity or to justify any verdict for the contestants on the
ground of mental incapacity. On this issue it is suffi-
cient to outline the prominent facts or showing made.
Mr. Gathings was a farmer, who lived in the prairie
section of Monroe county, near Gibson. He resided on
a small homestead of 46 acres, which he inherited from
his father. He had been married, but his wife became
deranged and died in the insane hospital. Testator at-
tended to his own business affairs up to his death in
1918. E. P. Poe, one of the subscribing witnesses, was
a constable of his district and had business dealings with
the testator, assisting him with deeds of trust and look-
ing out after certain trespasses on his place, and his
acquaintance and dealings had continued for over twen-
ty years. Mr. Shappard owned property several miles
west of testator's home, knew and visited him in his
home, and qualified as a competent subscribing witness
to the will. Both the subscribing witnesses state that
testator's mental condition both on the day the will was
executed and prior thereto was good, and that they
noticed nothing to indicate unsoundness of mind. These
witnesses were called by Mr. Higgason to act as sub-
scribing witnesses, but all at the instance and request of
the testator. The will was executed in the testator's
room at his home, and on the day of its execution tes-
tator talked for thirty or more minutes with the sub-
scribing witnesses and others about farming and general
subjects, exhibited from his pocket a writing which he
there stated to be his last will and testament, and asked
the witnesses to subscribe their names thereto and to
attest the document as testator's will. Thereupon all

the parties signed the writing, and testator then stated to Mr. Higgason that, inasmuch as there was no secure place on his premises to deposit the writing, he desired Higgason to carry the will to Higgason's store at Gibson and there deposit it in an iron safe for keeping. Higgason then took the will as requested, and after the death of Mr. Gathings exhibited it for probate.

The record shows that Roxie Howard was an elderly black negro woman, who had cooked for Mr. Gathings practically all of his married life, who lived in a little cabin in the yard, and for many years prior to testator's death had cooked his meals, cleaned the house, attended to the live stock about the barn, and otherwise did menial service in and about the premises. She was not present at the execution of the will, had no active part in handling, preserving, or exhibiting the document, and did not testify in the case.

The will is in the handwriting of an attorney, and was necessarily carefully prepared before the day of its execution. Dr. Hansell, the physician who attended Mr. Gathings since April 4, 1915, and thereafter until testator's death, gave evidence in support of mental soundness, maintaining that Mr. Gathings was of sound and disposing mind "absolutely in every respect." He stated that he was in sympathy with a man as old and lonely as Mr. Gathings and once or twice picked him up in his car and carried him to West Point, and frequently took him around the territory as the witness went on his calls. But the physician did state that testator was in ill health, suffering from hardening of the arteries and enlargement of the prostrate gland and general physical debility.

Mr. Roberts, a white man and neighbor had known testator for thirty-five years. And Milender, a near neighbor, had cultivated land in the same field with the testator and knew him for two years. Mr. Cox, white, had known testator for twelve years; Mr. Craig, four

years; and J. M. Young, a justice of the peace in that territory, had known him eight years. Mr. Carlisle had known testator fifteen or twenty years, and bought land from him. Mr. Morgan, white, had known testator for eight or ten years, and had business dealings with him often; and Mr. Flynt, white, a deputy sheriff, had known him for twenty-five years, had spent the night with him, and knew testator well. Each of the witnesses mentioned gave positive testimony of mental soundness. This evidence is not seriously controverted by any of the testimony on behalf of the contestants.

The evidence further shows that the next of kin had moved away and had little communication and made few visits to Gathings' home.

We have thus indicated the very clear showing of mental soundness because an understanding of the facts is necessary to a correct disposition of that assignment of error based upon instruction No. 8 granted proponents. This instruction is as follows:

"The court instructs the jury for the proponent, Mrs. Tom Montgomery, J. M. Higgason, and Roxie Howard, that while it is true that the burden of proving that the alleged testator, J. P. Gathings, deceased, was of sound and disposing mind at the time of the making and the executing of the instrument of writing presented for probate herein is on the proponents, yet the law presumes that every man is sane until the contrary appears by evidence, and upon this legal presumption of sanity the proponents have the right to rest until it is overcome by some evidence showing the insanity of the alleged testator at the time of alleged making and execution of the said instrument of writing."

It appears that the proponents not only introduced the record of the probate in common form, but went forward with their testimony in chief before the contestants introduced any testimony.

Appellants maintain that charge No. 8, invoking the legal presumption of sanity is reversible error. It is a sufficient answer to this contention to say that, inasmuch as the proponents were entitled to a peremptory instruction on the issue of mental capacity, contestants are in no position to rely upon any erroneous instruction submitting this issue to the jury. It may be further pointed out as stated by our court in *Hitt* v. *Terry,* 92 Miss. 671, 46 So. 829, that—

"All the instructions on both sides with respect to presumptions of one kind or another were wholly irrelevant in the case, since there was the fullest proof offered by both the proponent and the contestants on both the issues involved."

But inasmuch as this instruction was approved by the learned chancellor, usually so accurate in his rulings, and in order that any error of this kind may hereafter be avoided, we shall make some observations as to the burden of proof resting upon the proponents to establish his *prima facie* case by proof of testamentary capacity. The general legal proposition that every human being is presumed to be of sound mind cannot successfully be denied, and it may be stated, on the other hand, that testamentary incapacity should not be presumed. But the existence of this general legal presumption of sanity does not, in our judgment, relieve the proponents of the necessity of making out a *prima-facie* case by proof of the testamentary capacity of the testator. To be more accurate, the legal presumption of sanity, generally existing, is not of itself sufficient to relieve proponent of the necessity of satisfying the conscience of the court that the document offered is the free act of a sound and disposing mind. The briefs of counsel on this point do not advert to the effect which the record of the probate in common form should have on the point under discussion, and we merely direct attention to the fact that the proponents might well have

rested on their *prima-facie* case based upon the *ex parte* probate proceedings in accordance with the statute. This was the express ruling of the court in *Sheehan* v. *Kearney*, 82 Miss. 688, 21 So. 41, 35 L. R. A. 102, when Judge WHITFIELD observed: "But the burden in both respects is satisfied by the introduction of the will and the record of the probated will, and the contestants must then offer proof to overcome the *prima-facie* case thus made in both respects"—with the privilege in proponent to rebut the testimony produced by the contestants. It seems that this procedure was not followed in the instant case, but we have no criticism to make of the plan adopted in the case at bar. On the general proposition that the mere presumption of sanity is insufficient to entitle a will to probate, the authorities are in hopeless conflict. Mr. Alexander, in his Commentaries on Wills, par. 399, observes:

"One line of decisions relies upon the presumption that all human beings, in the absence of evidence to the contrary, are of sound mind, and accepts the presumption as proof of testamentary capacity. Such authorities hold that it is only necessary for the proponent to prove the due execution of the will and to show that all statutory requirements other than testamentary capacity have been fulfilled. The presumption then completes the proof and establishes a *prima-facie* case."

But in paragraph 400 he states: "The weight of authority, however, and the better reasoning are that the proponent of a will must, in the first instance, establish his *prima-facie* case by proof of the testamentary capacity of the testator. Although, in the absence of evidence to the contrary, all persons are presumed to be of sound mind, and although this presumption may be accepted as a wise and profound rule of testamentary common law, yet it is not sufficient in itself to absolve the proponent from the necessity of proving the testamentary capacity of the testator."

While there may be some confusion on this point, the question is really not an open one in our jurisdiction. In *Martin* v. *Perkins,* 56 Miss. 204, our court, by Chief Justice SIMRALL, observed that even in probating a will in common form some proof should be made of testamentary capacity. After indicating a conflict in the authorities he says:

"But it is contended that, when the subscribing witnesses had proved the due execution of the paper, it was not incumbent on the proponent to go further, and make positive proof of mental capacity, but he might rely on the presumption of law in favor of the sanity of all persons.

"Perhaps the better opinion, on a collation and comparison of the several provisions of our statute, is, that some direct testimony of a sound and disposing mind should be given, on proof of the will in common form."

And in the much older case of *Evans* v. *Evans,* 10 Smedes & M. 402, Mr. Justice THACHER for the court quoted with approval from *Chase et al.* v. *Lincoln,* 3 Mass. 236: "These witnesses (subscribing witnesses) are placed around the testator to ascertain and judge of his capacity, and the heir has a right to insist on the testimony of all the three witnesses to be given to the jury."

In the recent case of *Helm* v. *Sheeks,* 116 Miss. 726, 77 So. 820, our court, by Judge ETHRIDGE, observed: "The statute requires two witnesses to witness the execution of a valid will, and the purpose of the statute in requiring witnesses is not only to establish the writing or signing of the instrument, but to have witnesses whose business it is to determine the capacity of the testator making a will."

In *Sheehan* v. *Kearney,· supra,* our court (82 Miss. on page 699 of the opinion, 21 So. on page 45, 35 L. R. A. 102) said:

"The next point which we shall notice is upon whom is the burden of proof as to testamentary capacity and undue influence. It will be seen, by reference to the elaborate note to *Prentiss* v. *Bates*, (Mich.) 17 L. R. A. 494, 50 N. W. 637, 53 N. W. 153, that there is a great conflict of authority on the former question even; and, by reference to *Baldwin* v. *Parker*, 96 Am. Dec. 697, that like conflict of authority exists as to the latter. So far as the former suestion is concerned, it is settled in this state, in *Tucker* v. *Whitehead*, 59 Miss. 594, that the burden is on the proponents throughout, and it is expressly so enacted by section 1825, Code 1892."

These cases beyond question hold that the burden of proof is upon the proponents to make some showing of testamentary capacity. The question is discussed with much learning of *Delafield* v. *Parish*, 25 N. Y. 9:

"The party producing the paper or the proponent of a will makes the allegation that it is the will or the wish of a free and competent testator, and the *onus probandi* is upon the party propounding the alleged testamentary paper. The conscience of the court is to be satisfied by the party setting up the will, that it is the will of a free and capable testator. This clearly recognized rule is well expressed by PARKE, B., in delivering the judgment of the Judicial Committee of the Privy Council in *Barry* v. *Bultin*, 1 Curt. 637; 2 Moore, P. C. 480, where he says: "The rules of law, according to which cases of this nature are to be decided, do not admit of any dispute, and they have been acquiesced in on both sides. These rules are two: The first, the *onus probandi*, lies in every case upon the party propounding the will, and he must satisfy the conscience of the court that the instrument so propounded is the last will of a free and capable testator.' Again: 'In all cases, this *onus probandi* is imposed on the party propounding a will.' In the late case of *Browning* v. *Budd*, 6 Moore, P. C. 430, the same learned judge said: 'Their

lordships have to apply to the facts of the case the
established rule on this subject laid down in *Parke* v.
*Ollatt*, 2 Phil, 323, and fully explained in the case of
*Barry* v. *Bultin*, 2 Moore, Priv. C. 480, viz., that the
burden of proof lies upon the party propounding a will,
and that a court of probate is not to pronounce in its
favor unless it is judicially satisfied that the instrument
propounded is the last will of a free and capable testa-
tor. ' ''

And further: "The same rule is distinctly recog-
nized and enunciated by the supreme court of Massa-
chusetts in *Crowningshield* v. *Crowningshield,* 2 Gray,
526. It was there held, in accordance with the uni-
versal rule, that the burden of proving the sanity
of the testator is upon him who offers the will
for probate, and this burden does not shift upon evi-
dence of his sanity being given by the subscribing wit-
nesses. Thomas, J., in an able and learned opinion,
says: 'When one dies owning real and personal estate,
the law fixes its descent and distribution. Under cer-
tain conditions, however, it gives to such owner the
power to make a disposition of his property, to take ef-
fect after his death. This is done by a last will and
testament. To make such will, certain capacities are
requisite in the maker, and certain formalities for its
due execution. . . . When, therefore, a will is of-
fered for probate, to establish it, to entitle it to such
probate, it must be shown that the supposed testator
had the requisite legal capacities to make the will; to-
wit, that he was of full age and of sound mind, and that
in making it the requisite formalities have been observed.
The heirs at law rest securely upon the statutes of de-
scent and distributions until some legal act has been
done, by which their rights under the statutes have been
lost or impaired. . . . Upon whom, then, is the af-
firmative? The party offering the will for probate
says in effect, This instrument was executed with the

requisite formalities, by one of full age and of sound
mind,—and he must prove it;  and this is to be done,
not by showing merely that the testament was in writ-
ing, that it bears the signatures of the deceased, and that
it was attested in his presence by three witnesses; but
also that it was signed by one capable of being a tes-
tator, one to whom the law had given the power of mak-
ing disposition of his property by will.'  The learned
judge further adds:  'There are strong reasons why the
same presumption as to sanity should not attach to
wills as to deeds in ordinary contracts.  Wills are sup-
posed to be made *in extremis.*  In point of fact, a large
proportion of them are made when the mind is to some
extent enfeebled by sickness or old age.  It is for this
reason that the execution of the will and the proof of
its execution are invested with more solemnity, the stat-
ute requiring it to be attested by three or more compe-
tent witnesses;  making 'void all beneficial devises,
legacies or gifts to such interested witnesses, and re-
quiring the presence of the three in probate court for
its proof.'  In conclusion, he says:  'On the whole mat-
ter, we are of opinion that where a will is offered for
probate, the burden of proof in this commonwealth is
on the executor or other persons seeking probate, to
show that the testator was, at the time of its execution,
of sound mind;  that if the general presumption of
sanity applicable to other contracts is to be applied to
wills, it does not change the burden of proof;  that the
burden of proof does not shift in the progress of the
trial, the issue throughout being one and the same;  and
that if, upon the whole evidence, it is left uncertain
whether the testator was of sound mind or not, then it
is left uncertain whether there was under the statute a
person capable of making the will, and the will cannot
be proved.''

In *Gerrish* v. *Nason,* 22 Me. 438, 39 Am. Dec. 589, the
point is discussed and the conclusion reached that:

"The presumption, therefore, that the person making a will was, at the time, sane, is not the same as in the case of the making of other instruments; but the sanity must be proved."

In *Comstock* v. *Hadlyme Society,* 8 Conn. 254, 20 Am. Dec. 100, cited by Mr. Redfield in his Law of Wills as one of the leading cases, the court said: "Those who claim under the will must, therefore, take upon themselves the burden of proof; and they must not only prove that the will was formally executed, but that the testator was of sound and disposing mind."

Our court, in *Shehean* v. *Kearney, supra,* referred to the case note in 17 L. R. A. 494, where many of the acthorities are collated. Others are referred to in the footnotes of paragraphs 400 and 401, Alexander on Wills, vol. 1, some of which we have examined.

There is only one Mississippi case which has come under our observation that might appear to be in conflict with the authorities above mentioned. Headnote 2 to *Payne* v. *Banks,* 32 Miss. 292, states the contrary rule, but the syllabus is based upon the general observation of Judge Fisher contained in the opinion that "the law presumes sanity, and hence this legal presumption must be rebutted." This remark was made in a case where there was testimony *pro* and *con* as to testamentary capacity, and we do not think the attention of the court was addressed to the narrow question now under discussion.

It follows from the authorities to which we have referred and the conclusion which we have reached that instruction No. 8, as given the proponents in the case at bar, is erroneous. We do not indicate the measure or degree of proof required. This necessarily depends upon the peculiar facts and circumstances of the given case. Much depends upon whether the will is wholly written and prepared by the testator himself, or whether there is anything on the face of the writing that casts

any doubt or suspicion or that tends to impeach the document. We may add that the right to execute a will is governed by statute, and a fundamental requirement under our statute is that the person must be of "sound and disposing mind." Section 3366, Hemingway's Code. It is a condition precedent. It was indicated in *Fatheree* v. *Lawrence*, 33 Miss. 585, that presumptions under certain circumstances may be indulged, especially "after a great lapse of time." We would shrink from any holding that would require the impossible. If there is a slight showing that the testator was a normal human being, discharging the ordinary affairs of life, it would be sufficient in the absence of contrary evidence. The necessity for proof is emphasized by the fact that many wills are executed during the last illness, when suffering and overpowering illness at times renders one unconscious and beclouds mind and memory. The object in all cases is to show that the will is the free act of a competent mind, and the degree of proof, as stated, must largely be left to the conscience of the court in any given case.

The only other justiciable issue, that of undue influence, was submitted to the jury under elaborate instructions for both sides and any conflict in the testimony has been settled by the jury. The showing made by the contestant's is weak.

The most damaging circumstance in evidence is the fact that Mr. Higgason, the residuary legatee, was present when the will was executed and took charge of the document and preserved and produced it for probate. Counsel intimate that Higgason should have explained and shown affirmatively his good faith. If he had taken the witness stand, doubtless an objection that he was an incompetent witness would have been promptly interposed. At any rate all the facts in reference to the execution of the will were fairly developed, and it was for the jury to determine from all the facts and circum-

stances whether the active participation of Mr. Higgason amounted to undue influence. Any presumption of fact based on the presence of Higgason was doubtless considered by the jury in connection with all other circumstances tending to establish undue influence. It is difficult to read the testimony and point out any other circumstance tending to prove undue influence. There was an effort to show illicit relations between the testator and Roxie Howard, but the proof is entirely insufficient. There is positively no direct testimony of any illicit relation. The nearest approach is the testimony of young Murphy, a kinsman, that on one occasion when he spent the night with Mr. Gathings he heard voices in Mr. Gathings' bedroom and the voice sounded like the voice of Roxie Howard. It affirmatively appears that Mr. Gathings lived in a community where white settlers were few and where the colored population largely predominated and furnished the labor. The testimony shows that the very kin who filed this contest had moved out of the state many years before testator's death and rarely visited Mr. Gathings at his home. For two or three years prior to his death there was very little communication between the members of the family, and none of the contestants was present or in any position to administer to the bodily needs and comfort the old man in his declining days and last illness. He had no child to lean upon. Roxie Howard was his only help. That she was faithful in cooking his meals, attending to the stock, and running the place generally is beyond question. At the time the will was executed Gathings himself was over sixty years of age and Roxie Howard was an aged negro woman. She had her cabin in the yard, much upon the order of colonial days in the South. There is some testimony that if he desired to borrow a horse or to know about anything on the place Mr. Gathings would reply "Ask Roxie;" and that he appeared to leave the management of everything to her. This is

a poor showing of undue influence.   There is no dispute that Gathings represented himself in buying and selling real estate, lending money, and taking mortgages for security, and otherwise generally in all trades or financial matters.   He had acquired and left an estate worth approximately ten thousand dollars.   The will was executed three years prior to his death and there was no effort to revoke it.   After its execution he was appointed by the chancery clerk an administrator upon the estate of his deceased nephew, Bob Smith.   Proof of this character is very strong, both as to testamentary capacity and the absence of any undue influence.

It is suggested that the provisions of the will are unnatural; that the relatives are poor and needy and there was no estrangement.   The court has repeatedly emphasized the rule of law that—"A man of sound mind may execute a will or a deed from any sort of motive satisfactory to him, whether that motive be love, affection, gratitude, partiality, prejudice, or even a whim or caprice."   *Burnett et al.* v. *Smith,* 93 Miss. 566, 47 So. 117;   *Gillis* v. *Smith,* 114 Miss. 665, 75 So. 451;   *Moore et al.* v. *Parks et al.,* 84 So. — (decided April 12, 1920).

The proof not only shows that Roxie Howard was a "faithful servant," as stated in the will, but that Mr. Higgason was a beloved friend and neighbor.   The testimony is uncontradicted that Mr. Gathings welcomed and appreciated the company of Higgason and in his sickness would send for him for help.   Mr. Higgason never failed to minister to his wants.   The record emphasizes the need which this aged and lonely man certainly must have felt for his faithful friend and companion in his declining and suffering days.   Higgason would visit him at nights.   When the evening shades appear, "when the day is done, and the darkness falls from the wings of night," then many a time "a feeling of sadness comes o'er" one situated as Gathings certainly was; and what is more natural than that he should welcome

or send for his faithful friend to minister to the needs of his body or comfort him in his loneliness. Must the courts adjudicate this relation and service as undue influence? We quoted with approval in *Gillis* v. *Smith,* *supra,* the observations of Mr. Black that—"Influence is in this sense undue only when it introduces a transaction which injuries some one materially or which is intrinsically unfair or unconscientious."

The day has not come when self-sacrifice shall be condemned and virtue no longer rewarded. The provisions of the will under review are entirely consistent with the feelings of gratitude which evidently animated the testator. There can be no merit then in any contention on this appeal that the will is unnatural, especially since all inferences of fact have been settled and passed upon by the jury.

In considering the facts of the case we have not overlooked the testimony for the contestants that in the opinion of some of the witnesses Mr. Gathings was an exceedingly quiet man; that he talked very little; that he was close or stingy in his business transactions, a recluse, and for several years in bad or failing health. We have given all the assignments our consideration, and, while some of the instructions might have been more appropriately worded, we find no reversible error in any of them when applied to the facts of this case. The witnesses who undertook to state their conclusion that the testator was of sound mind were all in a position to know and observe and pass an opinion upon facts.

On all points argued the decree should be affirmed.

*Affirmed.*