In re George's Estate, Turnage, et al. *v.* Stevens.

In Banc. April 10, 1950.

No. 37444 (45 So. (2d) 571)

Alfred Stoner and **N. C. Brewer, Jr.**, for appellants.

H. Talbot Odom and Stevens & Cannada, for appellee.

**Roberds, J.**

In this case we are to decide whether or not the following letter is a will:

"Beeville, Texas, March 17, 1947

"Dear Barksdale,—

"Yours just received I thank you so much Honey for all you have done for me & I want to say right now that I want to give you Aldridge's interest in Runnymeed & I want you to begin fixing things that you may get the rent for 1947. I want you & Leona to come when most convenient for you. Reese has not called me about the house yet but there is no special rush as I have paid the rent for this month in advance, he is to tell him I want the whole 4 lots & will get a surveyor to run the lines as soon as the weather permits. I think Leona will be fine & the Baptist ladies will welcome her. Love for all.

"Aff'ly

"Aunt Kate

"P.S. If I drop dead which I hope I will do, you have this letter to *prove your ownership*. Your new place of business has me guessing."

The letter was propounded as a will in the Chancery Court of Leflore County, Mississippi, by Barksdale Stevens, to whom it was addressed. The court peremptorily instructed the jury to find it to be a will, which was done, and it was admitted to probate. Contestants appeal.

The answer depends upon two questions: First, whether the postscript can be treated as a dispositive part of the letter; and, second, if not, whether the letter is testamentary in character and effect.

We now decide the first question. The writer of the letter was Mrs. Kate Duncan George, who resided at Beeville, Texas. The recipient was Mr. Barksdale Stevens, an attorney, who lived at Houston, Texas, some one hundred and seventy-five miles from Beeville. The letter was sent through the mail. It was written entirely in the handwriting of Mrs. George. It will be noted there is no signature underneath the postscript. Is the postscript a dispositive part of the letter under our statute and decisions?

Section 657, Code 1942, requires all holographic wills to be "subscribed" by the testator or testatrix.

In Armstrong v. Walton, 105 Miss. 337, 62 So. 173, 46 L. R. A., N. S., 552, Ann. Cas. 1916E, 137, this Court held that, while an attested will does not have to be signed at the end or subscribed, the statute requires that holographic wills be "subscribed".

In Better v. Hirsch, 115 Miss. 614, 76 So. 555, 556, this Court said: "A holographic will would have to be 'subscribed' by the testatrix. Our court has followed those authorities which make a distinction between the words 'signed' and 'subscribed.' "

Baker v. Baker's Estate, 199 Miss. 388, 24 So. (2d) 841, involved the exact question we are now considering. The provisions of that instrument were, without ques-

tion, dispositive and testamentary in character but they appeared beneath the signature of the testatrix. The opinion expressly noted that our statute provides that an attested will need only be "signed" as such but that an holographic will must be "subscribed"—that is, signed underneath, and that no unsubscribed provision could be effective as a will. It referred to Armstrong v. Walton and Better v. Hirsch, supra, and cited texts holding that where the statutes require the will to be subscribed, that nothing which appears beneath the signature can be treated as a part of the will. The opinion quoted Black's Law Dictionary, 2nd Ed., as defining the word "subscribed" as meaning to write the "name under . . . at the bottom or end of the writing." To this, we might add that Webster's International Dictionary, Second Edition, defines the word postscript as "A note or series of notes appended to a completed letter, book or the like, usually giving an afterthought or additional information."

In Borchers v. Borchers, 145 Ark. 426, 224 S.W. 729, Charles S. Borchers, a soldier, wrote his father from Camp Beauregard, La., a letter, to which he added this unsigned postscript: "Papa, if I die for my country, I want you to receive my insurance money. Good-bye." It was insisted that this unsigned postscript constituted a holographic will. The Arkansas statute, Section 8012 of Kirby's Digest, provided that "Every last will and testament of real or personal property . . . must be subscribed by the testator at the end of the will, or by some person for him at his request." The Arkansas Court held this provision ineffective as a will because Charles Borchers' signature was not subscribed thereunder. It is true the Arkansas statute requires the instrument to be subscribed at the end, and our statute only requires it to be subscribed. However, the provision for subscribing at the end, as contrasted with the requirement merely that it be subscribed, without expressly stating at the end, is directed to the space which may be left between

the signature and the last word above it. The two stat-
utes mean the same thing in their requirement that the
will must be subscribed.

It is, therefore, settled in Mississippi that holo-
graphic wills must be "subscribed by the testator, or
another for him. Nothing can be effective which appears
after and beneath such signature. "The purpose of such
requirement is not only that it may thereby appear on
the face of the instrument that the testamentary pur-
pose therein expressed is completed, but also to pre-
vent any opportunity for fraud or interpolations between
the written matter and the signature. The position of
the signature at the end of the will furnishes in itself
internal evidence of finality or completion of intent."
57 Am. Jur. 213, Section 267. It is not the prerogative
of this Court to pass upon the wisdom or unwisdom of
the statute. However, were we permitted to do so we
would be compelled to recognize that the experiences of
history justify the wisdom of the provision. Since the
law first recognized the right of one to dispose of prop-
erty by will, living people have tried to execute wills
for those who have departed this life.

We, therefore, cannot treat the postscript here in
question as any part of the dispositive provisions of this
letter.

The second question is whether, aside from this post-
script, the letter is testamentary in character and effect.

An understanding of the background will be helpful
in our endeavor to correctly solve this question. Runny-
mede Plantation is located in Leflore County, Mississippi,
and was owned by General J. Z. George. All of the
owners of that Plantation acquired their interests from
General George. Mrs. George, at the time she wrote this
letter, was the owner of a one-eighteenth and a one-ninth
undivided interest in that plantation, and all of the per-
sonal property used in connection therewith, including
any money on hand produced through the operation
thereof. The plantation consisted of nearly four thou-

sand acres, of which approximately three thousand acres were in cultivation. The one-eighteenth interest was acquired by Mrs. George from her only son, Aldridge George, who died in December, 1946. Mrs. George owned other property in Leflore County, Mississippi, in Tennessee and in Texas.

Barksdale Stevens was not related by blood to Mrs. George. He is a great nephew of the husband of Mrs. George, who departed this life many years ago. The contestants are blood relatives and the heirs at law of Mrs. George. At the time she wrote the letter, she was between seventy-five and eighty years of age.

Barksdale Stevens was a prominent lawyer in Houston. Texas. It is shown he was very kind and considerate of Mrs. George. He advised with her about many of her matters, although she had an attorney at Beeville, who also advised with her, and seems to have actually attended to most of her matters needing attention by an attorney. There is no question that Mrs. George was very devoted to Barksdale Stevens, and he to her. Nor is there any question that she intended that he should share in her estate. However, the testimony of the witnesses on behalf of proponent shows that at different times she had varying ideas of the value and the specific type of property she desired to give him. Some testified she said at one time she wanted him to have certain real estate in Beeville; others that she told them she wanted to give him a certain amount of money; others that she desired him to have Aldridge's part of Runnymede and yet others that it was her desire to give him not only the one-eighteenth interest of Aldridge but also the additional one-ninth she acquired through her deceased husband, an aggregate of three-eighteenths interest in the Plantation. So we are confronted with the fact that Mrs. George intended that Barksdale Stevens should share in her estate. And it is our duty, as it is our desire, to effectuate that intent if it can be legally done. However, it is not her intent but what she did which must control.

We cannot give effect to her intent unless she did so herself. That involves the deinite, specific question whether the terms of this letter are testamentary and dispositive in character, constituting a vehicle for transmission to him of title to the designated property, or whether the letter expressed an intent with the purpose to later effectuate it.

██ ██ In the first place, disregarding the postscript, as we must do, it is clear the letter was not written in contemplation of death. She was anticipating a visit from Mr. and Mrs. Stevens; she was expecting to enter upon negotiations for the purchase of four lots; she was looking to the future.

Again, after expressing a desire to give Mr. Stevens, one-eighteenth interest in Runnymede, she said "I want you to begin fixing things that you may get the rent for 1947". This clearly shows she intended to execute some paper in the future to effectuate her desires. The expressions disclose an intent and purpose to do something else in the future—they are not vehicles for effective transfer of title. They do not dispose of property. They merely express an intent to give Mr. Stevens property, and request that he "fix" papers to carry that intent into effect.

And, to demonstrate clearly that Mrs. George did not consider that she had executed a will, the record discloses that, after the letter in question was written, she requested Mr. Barksdale Stevens to prepare a will for her. He did that, but it appears that some of the provisions thereof to beneficiaries other than Mr. Stevens were not satisfactory to her; whereupon, in an earnest, conscientious effort to comply with the wishes of Mrs. George, Mr. Stevens prepared another will and mailed it to her, together with a letter explaining the changes which had been made. All of this was a short time before the death of Mrs. George on September 20, 1947. Apparently this will was not satisfactory to her and she never executed it. She died intestate. It is signifi-

cant, as bearing upon whether she considered the letter under discussion to be a will, that this prepared form, in its provisions to Barksdale Stevens, did not coincide with the letter of March 17, 1947. In that form he was given a three-eighteenth interest in Runnymede and in the personal property used in connection therewith, ''and also all of my interest in any crops thereon at the time of my death'', apparently an effort to comply with the desire expressed in the letter that Mr. Stevens would ''begin fixing things that you may get the rent for 1947''.

It is true that when the letter and the last prepared form of will were offered in evidence by contestants objection was made thereto by able counsel for proponent on the ground that ''this letter is with reference to an unsigned will'', and the further ground that the documents might confuse the issues, and that such evidence was incompetent, irrelevant and immaterial, and that the court, in sustaining the objection, did so on the ground the instrument was never executed as a will and ''that it does not throw light on any phase of the issue in controversy here''. However, the learned Chancellor was in error in so ruling. ██ █ The circumstances surrounding the preparation of these documents, their contents, and the action of the parties with reference thereto, were competent upon the questions whether Mrs. George intended the letter as a will and so considered it, and whether, in legal effect, it was a will.

We are forced to conclude that the terms of the letter are not testamentary, or dispositive, in their nature and effect; and that the letter is merely an expression of a desire with the purpose to later effectuate it, which was never done.

Reversed and judgment here for appellants.