218 So.2d 843 (1969)
W.G. WILSON, Executor of Estate of Clara Thompson, Deceased
v.
Andrew POLITE, Eugene Polite, Willie Washington and Roberta Leggitt.
No. 45073.
Supreme Court of Mississippi.
February 3, 1969.
Rehearing Denied March 3, 1969.
*844 Jacobs, Griffith & Hatcher, Cleveland, for appellant.
Phillip Mansour, Greenville, for appellees.
JONES, Justice:
On December 20, 1966, there was presented in vacation to the Chancery Court of Washington County, Mississippi, a petition for probate of what was represented to be the will of one Clara Thompson, deceased. Necessary affidavits as to the handwriting were filed. The petition recited:
That the said Testator (sic) died seized and possessed of certain real and personal estate, consisting chiefly of four lots with two residence buildings located in the City of Leland, Washington County, Mississippi, and one lot located in Pine Bluff, Arkansas, all valued at approximately $9,650.00. Bank of Leland, Miss., checking accounts (one in name of Carrie Kennedi) totalling approximately $6,000.00; and miscellaneous personal property valued at about $500.00. * * *
The petition was by one W.G. Wilson whose connection is later shown. The instrument was admitted to probate in common form in vacation on December 20, 1966.
A petition to intervene with the affidavit thereto executed on July 19, 1967, was filed by Andrew Polite, et al., alleging their relationship to the testatrix; that the court had admitted to probate a certain instrument on December 20, 1966, as the will of the testatrix and directed letters testamentary to issue to one of the defendants, W.G. Wilson. It was alleged in said petition that the said writing was not valid in law as a will, because it did not comply with Section 657 of the Mississippi Code of 1942 Annotated (1956) in that it was not subscribed by the said Clara Thompson. Petition prayed for a hearing and a recision of the order admitting said writing to probate, adjudicating said instrument to be null and void, and that the said Clara Thompson died intestate and for other relief. The defendant's answer presented, as the sole issue, the question as to whether said instrument was executed in accordance with Section 657 aforesaid.
The matter came on for hearing, and the chancellor, having declared the said instrument invalid and of no effect as a last will *845 and testament, the case is brought here on appeal. The said instrument which it is sought to establish as the will of Clara Thompson is as follows:

*846 
*847 
*848 
*849 On the hearing, as is usual, there was introduced the proceeding for the probate of said alleged will in common form which included, of course, the petition for probate with the statement above quoted as to the assets or the said property owned by the said decedent at the time of her death.
The sole question is whether this instrument constitutes a holographic will.
We begin the consideration of this issue with these basic facts regarding wills.
No person has an inherent or constitutional right to make a will disposing of his property. Such is a privilege extended to the citizens by the State. 94 C.J.S. Wills § 3, p. 680 (1956); Mississippi College v. May, 241 Miss. 359, 128 So.2d 557 (1961); Woodville v. Pizzati, 119 Miss. 442, 81 So. 127 (1919).
It is a requisite to a valid will that it be executed as prescribed by statute. 94 C.J.S. Wills § 127(1), p. 898 (1956).
No matter how earnestly one may desire and intend to make a will, a paper, although fully intended by the writer to be a will, is ineffective and invalid unless its execution meets statutory requirements.
The purpose of statutes prescribing formalities for the execution of wills is not for the purpose of restricting the power of testator to dispose of his property, but it is to guard against mistakes, impositions, undue influences, fraud, deception, etc., which would divert the property of the testator from those intended by him or her to inherit same. The formalities are for the testator's protection also, as well as the beneficiaries'.
Our statute on the execution of wills, being Section 657, Mississippi Code of 1942 Annotated (1956), provides for the method of execution and the manner in which one may exercise the privilege granted by the State to him or her, if it is desired to bequeath property rather than permit it to go according to the laws of descent and distribution.
The statute reads as follows:
Every person aged twenty-one years, male or female, married or unmarried, being of sound and disposing mind, shall have power, by last will and testament, or codicil in writing, to devise all the estate, right, title, and interest in possession, reversion, or remainder, which he or she hath, or at the time of his or her death shall have, of, in, or to lands, tenements, hereditaments, or annuities, or rents charged upon or issuing out of them, or goods and chattels, and personal estate of any description whatever, provided, such last will and testament, or codicil, be signed by the testator or testatrix, or by some other person in his or her presence, and by his or her express direction; and, moreover, if not wholly written and subscribed by himself or herself, it shall be attested by two or more credible witnesses in the presence of the testator or testatrix. (emphasis added).
There are two methods of executing wills, and the method exercised determines the type of will made. One of the methods is by a written instrument "signed" by the testator and attested by two or more credible witnesses in the presence of the testator or testatrix. The statute provides that in such a will it shall be "signed" by the testator or by some person in his presence by his or her express direction, and if it is not wholly written and "subscribed" by the testator, it shall be attested by two or more credible witnesses in the presence of the testator. This Court has determined that when the statute uses the word "subscribed" in connection with a will not attested by witnesses, the word "subscribed" means signing at the end or beneath the will. Baker v. Baker's Estate, 199 Miss. 388, 24 So.2d 841 (1946). The Court there quoted with approval the definition of "subscribe" contained in Black's Law Dictionary (2d ed.) as follows: "In the law of *850 contracts to write under; to write the name under; to write the name at the bottom or end of a writing." This Court also cited with approval, the definition of "subscribe" in 2 Bouv. Law Dict., Rawle's Third Revision, p. 3171, as follows: "To write underneath; the word being derived from the two Latin words `sub' meaning under, and `scribo' to write."
From this it easily can be seen that there are two classes of wills, and that a dispository instrument attested by two witnesses, as required by the statute, which may be signed anywhere on the paper, is in a distinct category separate and apart from a holographic will. The attested will, whose witnesses are required to be present when the testator signs, is subject to proof by the testimony of said attesting witnesses. Those witnesses, of course, know what occurred, what was said, what was done, and in the probate of such a will, these witnesses, by affidavit, swear of if necessary, testify, under oath, that the instrument was signed, published, and declared by the testator, in their presence, as his or her last will and testament.
The Baker case, supra, commits this Court to the doctrine that the word "signed" in the statute insofar as execution of an attested will is concerned, means that the name of the testator may be written at any place on the instrument, so long as it is declared to be his signature, and the instrument is published and signed in the presence of the witnesses.
We have before us here what is claimed to be a holographic will. To be such it must be executed in accordance with the specific requirements of the statute. It must be laid on the table beside the statute to determine whether its execution is in accord therewith. If it is not executed as provided by the statute, it is not a will, regardless of the intention of the alleged testator.
The said paper hereinbefore shown or pictured, was found in an envelope on which was written, "this is my last will to open after My Furneal (sic) and read By W.G. Wilson, My adm." In the left-hand upper corner of the envelope, there appeared after the words, After 5 Days Return To, the following: "Clara Thompson, 201 Robb Street, leland (sic) 58756." Nothing on the envelope appears to be a signature or subscription to a will. A signature on an envelope is not a subscription. 94 C.J.S. Wills § 205, p. 1047 (1956); 57 Am.Jur. Wills § 647, pp. 439-40 (1948). The statute prescribing the place of signature is required to be followed in Baker v. Baker's Estate, supra; 57 American Jurisprudence Wills section 267, page 213 (1948). Photostatic copy of said envelope appears heretofore.
The intent of one to make a will, insofar as probate of a holographic will is concerned, is immaterial. The question is whether the will actually is executed in accordance with the statute of the State.
What one desiring to make a will intends is immaterial except as to whether the testator intended that his name appearing on the will should be his signature. This can be determined from the will alone.
The only evidence which will justify this conclusion must be found in and on the instrument itself; and, in the absence of anything on the face of the paper to raise the inference that a name appearing elsewhere than at the end of the writing was intended as a signature in execution, the holographic document may not be deemed a valid will. 94 C.J.S. at 1046. (emphasis added).
Of course an attested will, as hereinbefore stated, has witnesses who can testify as to what actually happened, including statements from testator that he or she has signed and that the name appearing there is a signature and declaring same to be his or her will.
Evidence to determine whether the name of the testator on the holographic *851 will was intended by him or her to be his signature or subscription must be found within the four corners of the will itself. A holographic will wholly written in the handwriting of the testator is presumably written in solitude and in most cases in secrecy because it is not desired that the contents thereof be published. Consequently, there are no witnesses available, and if one should be available, it would be in the great majority of cases, an unrealistic situation and perhaps suspect. The only believable evidence as to the intent of the testator, insofar as affixing her signature to a holographic will, as stated, is on the will itself. Testamentary intention only becomes a subject of inquiry or proof after the will is admitted to probate, and if it is necessary to construe its provisions.
The rule is stated in 94 C.J.S. Wills § 205a (1956):
An instrument offered as a holographic will must be a complete and executed document, although absolute precision of execution is not necessary, and all that is required is a clear showing on the face of the instrument of its execution in conformity with the law. (emphasis added).
A reading of the cases of Baker v. Baker's Estate, supra, Estate of Erwin King v. King, 203 So.2d 581 (Miss. 1967), and George's Estate, Turnage v. Stevens, 208 Miss. 734, 45 So.2d 571 (1950), will show clearly that this State has embraced as its law the rules hereinbefore stated. In George's Estate, supra, a lady had written a letter to a close friend. The letter was signed and there was no question about "Aunt Kate" being a signature. After and below the signature she wrote a postscript. The postscript was not signed. The entire letter was written in the handwriting of the purported testatrix. Our Court in this opinion and in referring to an Arkansas case, and the Arkansas statute, stated that the Arkansas statute required the instrument to be subscribed "at the end," while our statute only requires it to be subscribed. Our Court said: "The two statutes mean the same thing in their requirement that the will must be subscribed." Further the Court said:
It is, therefore, settled in Mississippi that holographic wills must be "subscribed" by the testator, or another for him. Nothing can be effective which appears after and beneath such signature. "The purpose of such requirement is not only that it may thereby appear on the face of the instrument that the testamentary purpose therein expressed is completed, but also to prevent any opportunity for fraud or interpolations between the written matter and the signature. The position of the signature at the end of the will furnishes in itself internal evidence of finality or completion of intent." 57 Am.Jur. 213, Section 267. It is not the prerogative of this Court to pass upon the wisdom or unwisdom of the statute. However, were we permitted to do so we would be compelled to recognize that the experiences of history justify the wisdom of the provision. Since the law first recognized the right of one to dispose of property by will, living people have tried to execute wills for those who have departed this life.

We, therefore, cannot treat the postscript here in question as any part of the dispositive provisions of this letter. (emphasis added). 208 Miss. at 749, 45 So.2d at 572-73.
In that case, the signature "Aunt Kate" was plainly evident as a signature not being a part of any sentence, suggestion, or comment, but being at the end of all thoughts embodied in the letter. The postscript, which was not considered by the Court, was beneath the signature; the signature composing no part of said postscript. Prior to the case of George's Estate, the Court decided Baker v. Baker's Estate, supra, in which there was an attempt there to probate a paper as a holographic will. The lower court probated the instrument and an appeal from this determination followed.
*852 In Baker, the instrument was wholly written by Mrs. Metta G. Baker, deceased, but as for its "subscription" the proponents relied upon the first words of the will or the caption thereof which said: "Metta G. Baker writing this." Following that proceeded the disposition of her property. It was stated in that opinion "No signature, date or other writing appears underneath the last paragraph of the instrument." The questions there presented were (1) whether the caption above quoted was intended to be placed there as the executing signature or merely as words of description and identification of the person writing, and (2) whether or not the said identifying notation above the beginning of the document means that the same is "subscribed" within the meaning of our statute. The Court quoted with approval 28 R.C.L., section 60, page 108, which stated:
"The formalities to be observed in the execution of wills are simple and calculated to prevent frauds and uncertainty in the testamentary dispositions of property, and where a legislature has seen fit to impose certain requirements looking to the execution of a will, compliance with such requirements is necessary to the validity of any instrument offered as a testament. No essential formality may be dispensed with, and a failure to comply with formalities prescribed for the prevention of fraud is not excused by showing that in the particular case under consideration there was no fraud. The power of transmitting property by will is a power to be exercised solely under the statute law, and only by compliance with the requirement of the statute may an heir be deprived of his inheritance. It is the intention of the legislature which controls, not that of the testator, and a will which in its execution does not conform to the provisions of the statute will be denied probate, notwithstanding the intention of the testator. It is immaterial that the requirements of the law in their application in particular cases may defeat the actual intention of a person as to the disposition of his property." Also in Section 72 of the said text, it is stated, in recognizing that there is authority to the contrary, that: "On the other hand it has been said that the name written at another place than the end of the document and not for the purpose of authenticating it and indicating its completion, but merely to identify the person who is making the will, is not to be considered as a name signed to the will."
And, in 68 C.J. 722, the rule is announced that: "Where the statutes provide that a valid holographic will be signed at the end of the writing, or be `subscribed,' the requirement must be fulfilled," citing among other cases that of Better v. Hirsch, 115 Miss. 614, 76 So. 555. However, the same paragraph of this text further states that: "notwithstanding the usual place of signing and thereby evidencing the execution and completeness of a holographic will is at the end of the document, the signature of the testator if found elsewhere than at the end may be a signature or token of execution, if the circumstances warrant the inference. However, the only evidence which will justify this conclusion must be found in and on the instrument itself; and, in the absence of anything on the face of the paper to raise the inference that a name appearing elsewhere than at the end of the writing was intended as a signature in execution, the holographic document cannot be deemed a valid will." (emphasis added). 199 Miss. at 392-393, 24 So.2d at 842.
The Court than made a distinction between wills that were attested holding that the signing of such wills could be at any place on it, but that the holographic will had to be "subscribed."
The Court also said:
We are also of the opinion that the words "Metta G. Baker writing this" appearing at the top of and as a caption to the first page of the instrument here under consideration were words of description and identification of the person *853 writing the same, and that the use of such words was not intended as a signature in execution of the instrument. 199 Miss. at 395, 24 So.2d at 843. (emphasis added).
The words "Metta G. Baker writing this," as shown above, were held in that case to be words of description and identification of the person writing same and not a signature.
Would it have made any difference if these same words, rather than being at the top, constituted the last sentence or next to the last sentence of an instrument? Would the transposition of this clause from the top of the will to the bottom have eliminated the words "writing this" and left only the name of Mrs. Baker? Would not such words still have been such words of "description and identification" of the person writing the same?
In the Estate of Erwin King, supra, there was presented to this Court an instrument of writing alleged to be a holographic will. One of the questions involved was the same as the questions here to wit: Did Erwin Holms King "subscribe" the document? The purported testator's name appeared on the top of a page marked "3" of a four-page instrument, and this Court in that case after reviewing the case of Better v. Hirsch, 115 Miss. 614, 76 So. 555 (1917); Baker v. Baker's Estate supra; and George's Estate v. Stevens, supra, concluded that the law of Mississippi was as follows:
In summary, the court has construed the statute regarding holographic wills to mean (1) it must be signed at the end of a document, testamentary in character, which shows on its face that the testamentary purpose therein expressed is completed, (2) nothing which follows the signature may be considered, (3) if the writing does not meet the requirements of the statute the intent of the writer is immaterial.

The part of the document in question which precedes the signatures thereon fails to show on its face that the testamentary purpose was completed. On the contrary the purported signatures appear in the middle of a sentence. This document itself shows that the part above the purported signatures was incomplete. Moreover, there is nothing on the face of the writing indicating that the four "signatures" were affixed to the writing to authenticate the document as the last will and testament of Erwin Holms King. The position of these names, their relation to the body of the writing, and the fact that one of them is the name of the mother of the deceased, signed by the deceased, indicates that these names had some other purpose than the authentication of the document.
We are mindful of the evidence offered by the proponent to the effect that two witnesses saw the deceased place his name on the document and declare it was his will. This testimony was admissible for some purposes, but not to show that the will was subscribed as the statute required. Baker v. Baker's Estate, supra.
This Court has stated countless times that the intention of the testator is para-amount in the construction of wills. But the search for the testator's intention does not begin until there is a will executed in accordance with the requirements of the statute. In this case there is no will. The chancellor was correct. His decree is affirmed. (emphasis added). 203 So.2d at 583-584.
It is our conception that the instrument here presented for probate does not meet the requirements as set forth in the King case because (1) it is not signed at the end of the document; and (2) the instrument does not show that its testamentary purpose is completed, and as said in King, there is nothing on the face of the writing indicating that the name was affixed to this writing to authenticate the document as the last will and testament of Clara Thompson. What the proponents *854 propose is that this Court declare to be the signature of the testatrix her name which appears in the fifth line above the end of the instrument where it is said: "I Clara thompson do hear by & Swear that i am in Very good health & Sound Mind at this righting Please do as i ask you to do & pay your selves of Mr. Sterling." As it was in the King case, the name so appearing was a part of a sentence. It was not at the end of the will. Of course, we are conscious of the fact that there are cases which say provisions, particularly dispositive provisions, which are written below and after a signature may be ignored. But in all the cases that we have found so holding, there was no question about whether a signature was affixed to the instrument. In nearly every case a signature was where it could be expected to be. Except for a postscript or codicil beneath the name, the signature was found subscribed beneath the will. In those cases there was no question as to whether the instrument was signed or whether a signature could be found; the question was, the signature being there, was all that was beneath it, and unsigned, null and void? We have yet to run across a case where a court in a holographic will has eliminated words preceding and succeeding the name of the purported testator in order to establish that name as a signature. What the proponents ask us to do here is to strike out the words "I * * * do hear by and Swear that i am in Very good health & Sound Mind at this righting Please do as i ask you to do & pay your selves of Mr. Sterling," thereby leaving the name of the testatrix, "Clara Thompson," standing alone to become her subscription to a holographic will. In other words, the proponents are asking us to do what the alleged testatrix did not do herself, that is, make a will.
As we have heretofore quoted, it must clearly appear from the will itself that it is her subscription to the will. There is nothing on the will to so indicate, but there are certain facts in the will and proceedings that would indicate she had not completed the disposition of her estate. The will itself shows that she had four diamonds, and she only disposed of three. The petition to probate the instrument, sworn to by W.G. Wilson, showed that in addition to the property mentioned in the will, she had checking accounts in the Bank of Leland, one being in the name of her sister (Carrie Kennedi) who had died and of whom the alleged testatrix was heir and that these two accounts totaled $6,000. The will makes no provisions whatsoever as to who shall inherit this $6,000 as well as the diamond ring above mentioned. Can we say in the face of these facts that she had completed her testamentary intentions?
If the five lines above quoted, in which her name appeared had been at the top of the will, under the Baker case, the Court would hold that those words were descriptive and identifying of the writer.
Can we say that by moving these words from the top of the paper to the bottom they became ipso facto a subscription under the statute, rather than a descriptive and identifying sentence of the writer?
As further evidence of the fact that the will was not completed, it will be noted that there was no executor named in the instrument. But by inspecting the envelope, a picture of which is heretofore included, it is shown that at some time, apparently after the paper had been placed in the envelope, there was added on the envelope the words, "and read by W.G. Wilson My adm." This is the first place any reference is made to an administrator or executor. It appears to us from the picture of the envelope that these words were added sometime later. So as to whether the instrument was completed, we have three elements: (1) the four diamonds, one of which is undisposed of, (2) $6,000 in the bank, which is undisposed of, and (3) the failure to name an executor in the instrument coupled with the fact that sometime later on the back of the envelope, the writer did undertake to appoint an administrator. We think this case falls squarely without the requirements for a holographic *855 will as stated in the King case in that it was not signed at the end, the testamentary purpose was not completed, and the alleged signature or subscription is written in and as a part of a sentence. How can we tell from the instrument that Clara Thompson did not intend to add a provision disposing of the diamond and the $6,000 among her heirs?
Beginning on page 926 of 19 A.L.R.2d is an annotation styled, "Place of signature of holographic wills," on page 932 under the heading, "Under requirement that signing be at end," the author of this article announces what to us seems the logical and sensible rule to be followed, when it is stated:
It may be observed here that in those cases in which the question has been expressly considered the view has generally been taken that the "end" of the instrument is either the physical end of the paper or papers on which the will is written or the logical end from the standpoint of the instrument's continuity of thought. (emphasis added).
As heretofore indicated, we think that the law as announced in cases where wills are attested is inapplicable here and not even persuasive, since, in these cases, there are witnesses, and it is only required that the signature be on the will.
The legislature passed the statute advising people how to prepare their wills. It conferred upon the citizens of the State the privilege of devising their property to other than legal heirs, but this power or privilege was conditioned for the protection of the testator and the beneficiaries upon the procedure prescribed by the statute. The legislature said that the person desiring to make a will must follow this procedure. It did not give this Court or any court the right to waive the requirement as announced by said statutes. It did not say that this Court or any court could eliminate from the instrument attempted to be probated, any words [and this is especially applicable to holographic wills] in order to do that which the writer had failed to do to wit: Make a will. No where is there a court authorized to make a will for any decedent and that is exactly what we would be doing if we said we were going to strike out those words in this instrument which keeps it from being a will.
As said nearly 100 years ago (1876) by the Court of Appeals from New York in Sisters of Charity of St. Vincent de Paul v. Kelly, 67 N.Y. 409, 415 (1876):
Can we say that the end of the will has been found, until the last word of all the provisions of it has been reached? To say that where the name is, there is the end of the will, is not to observe the statute. That requires that where the end of the will is, there shall be the name. It is to make a new law to say that where we find the name, there is the end of the will. The instrument offered is to be scanned, to learn where is the end of it as a completed whole; and at the end thus found, must the name of the testator be subscribed. (emphasis added).
Affirmed.
RODGERS, PATTERSON, INZER and SMITH, JJ., concur.
ETHRIDGE, C.J., GILLESPIE, P.J., and BRADY and ROBERTSON, JJ., dissent.
ETHRIDGE, Chief Justice (dissenting):
The controlling opinion constitutes, in my opinion, a hypertechnical construction of the statute on holographic wills, and in doing so it selects a line of authorities and an approach not consistent with the trend of cases in the country, on an issue not previously decided in this jurisdiction. Moreover, the refusal to probate this will rejects the unquestionable intent of its maker.
The statute which authorizes holographic wills states that a will must be "signed by *856 the testator or testatrix, or by some other person in his or her presence, or by his or her express direction; and, moreover, if not wholly written and subscribed by himself or herself, it shall be attested by two or more credible witnesses * * *" Miss. Code 1942 Ann. § 657 (1956) (Emphasis added).
The general question is whether Clara Thompson's will complies with the statute. It manifestly was intended by her to be a will. It is in her handwriting and is designated as "my second will." It makes certain specific bequests, and contains what I construe as a residuary clause, providing that after her bills are paid, the money will be put in the Leland Bank and given to the persons named in the will, with everyone getting a part "if any is left." After making a full and complete disposition of her estate, the document concludes:
I, Clara Thompson, do hereby and (sic) swear that I am in very good health and sound mind at this writing. Please do as I ask you to do and pay yourselves of Mr. Sterling [Sterling is vice president of the Bank of Leland].
In short, after making a complete disposition of her property, Clara Thompson signed her name in the final five lines of the document, in a sentence simply stating that she was in good health and sound mind. There are no dispositive provisions whatever following her signature in her own handwriting.
She then sealed this document in an envelope, with her name and address in the return portion of the envelope in her own handwriting, and wrote on the outside of the envelope, "This is my last will to open after my funeral and read by W.G. Wilson, my adm."
The controlling opinion holds that the words "Clara Thompson," in her own handwriting on the fifth line from the bottom of the document, but not followed by any dispositive provision, were not intended by her as a signature, but were words of "description and identification" of the person writing the instrument. In all candor, this seems to me to be a non sequitur. Evidently Clara Thompson intended this to be her will, and when she wrote her name near the end of the document, she of course must have intended it both to describe and identify her as well as to represent her own authentication of her testamentary purpose.
The majority opinion also holds that her handwritten name on the fifth line from the bottom of the document is not a "subscription" as required by section 657. In short, negating the effect of what this woman manifestly wanted, it is held that the subscription must be at the physical end of the writing, the point which is spatially farthest removed from the beginning. Mississippi has no case adopting this extremely literal interpretation of the statute as the ratio decidendi of the case. Hence we have a choice, and I think that the Court is making the wrong choice.
Baker v. Baker's Estate, 199 Miss. 388, 24 So.2d 841 (1946), on its facts is clearly distinguishable from the instant case. The caption of the will contained the following words: "Metta G. Baker writing this." Following that was the document attempting to dispose of testatrix's property, with no signature appearing at the end of its dispositive portions. All the Court needed to hold was that the captioned signature preceded and did not follow the dispositive parts; and thus there was no subscription. However, the opinion contains a large amount of dicta and quotations from secondary encyclopedias, wholly irrelevant to the issue in Baker. Hence the subscription question was not decided in that case.
Nor was it decided in Re George's Estate, 208 Miss. 734, 45 So.2d 571 (1950), which involved a purported holographic will in the form of a letter signed "Aunt Kate," and followed by a postscript with dispositive provisions as to certain property. The Court held that the postscript could not be effective, since there was no signature following it, and that the letter without the postscript was not testamentary *857 in character and effect. In a dictum, the opinion stated that the provision "for subscribing at the end, as in the Arkansas Statute [now amended], is directed to the space which may be left between the signature and the last word above it." But the Court did not decide the issue presented here.
In Estate of King, 203 So.2d 581 (Miss. 1967), it was held that a four-page document was not a valid holographic will, since it did not contain any signature except in the middle of a sentence on the third page of a four-page document. The opinion reviewed the above cases and gave these conclusions:
In summary, the Court has construed the statute regarding holographic wills to mean (1) it must be signed at the end of a document, testamentary in character, which shows on its face that the testamentary purpose therein expressed is completed, (2) nothing which follows the signature may be considered, (3) if the writing does not meet the requirements of the statute the intent of the writer is immaterial.
The part of the document in question which precedes the signatures thereon fails to show on its face that the testamentary purpose was completed. On the contrary the purported signatures appear in the middle of a sentence. This document itself shows that the part above the purported signatures was incomplete. (203 So.2d at 583) (Emphasis added).
Thus the King case held that the signature of a testator in a holographic will must be after the portion of the will which reflects that the testamentary purpose was completed. There must have been a completed testamentary disposition prior to the signature of testator. The present will complies with that requirement.
The usual approach is summarized in 2 Page on Wills section 19.71 (1960), as follows:
If the clause below the signature neither affects the disposition of the estate nor appoints an executor or guardian, such clause does not invalidate the will, and the signature is at the end of the will.
Two theories have been announced to govern the application of statutes of this nature. One requires that the signature be at the physical end of the writing. In 57 Am.Jur. Wills § 268 (1948), it is stated:
According to the other theory, which, as the results in particular cases would indicate, prevails now in most jurisdictions, the end of a will at which the signature should appear in compliance with such a statute is the logical end of the disposition of property wherever that end may appear in the paper. According to some authority, the term "logical end" as thus used is the place where the draftsman stopped writing in the consecutive order of composition, as revealed by a reading of the instrument naturally and consecutively without deviating from the order of the instrument to have the sense continuous. A more liberal view is that the end of the will within the requirement of the statute can be determined from the unmistakable sequence which the testator intended to give to the writing as revealed upon the face of the instrument. A general rule often stated is that a will is considered as signed at the end when the signature is below all the disposing portions of the will, as where it appears in the testimonium clause, notwithstanding there is some writing below or following the signature. (Emphasis added).
See Annot., Place of Signature of Holographic Wills, 19 A.L.R.2d 926 (1950); 94 C.J.S. Wills §§ 171, 177 (1956).
In summary, there is no question about the testamentary qualities of this will. Clara Thompson was not an educated woman. It is apparent that the words which follow her signature were not dispositive in nature. It is undisputed that the words in the document are in her *858 handwriting. The validity of a will should not be affected by superfluous or useless words which follow the signature. The purpose of the statute is to prevent fraud. No fraud is suggested in this case, and under all the facts and circumstances, I think that there was a substantial compliance with the statute. See Weems v. Smith, 218 Ark. 554, 237 S.W.2d 880 (1951).
GILLESPIE, P.J., and BRADY and ROBERTSON, JJ., concur in this dissent.