SUSIE F. WALKER ET AL. *v.* RUFUS WALKER ET AL.

1. WILL.  *Attestation.  In the presence of testator.*

Under the requirement that a will shall be attested by two or more witnesses in the presence of the testator, where he has signed, and, having a mental consciousness of the act to be performed, but, because of the position he is in, does not actually see the witnesses subscribe their names, the attestation is good, provided he had the physical ability to change his position, and by so doing could have seen the signing.  *Watson* v. *Pipes*, 32 Miss. 451, cited.

2. SAME.  *Case in judgment.*

A will was prepared at the testator's direction, and at his request three persons were called to witness its execution.  He was quite sick and was lying in a "sort of stupor," but when spoken to would respond intelligently.  The paper was handed to him, with the remark, "Here is your will," when he called for and adjusted his spectacles and either read or glanced over the instrument and, knowing the contents, signed it in the

67 MISS.—34

presence of the witnesses, and asked if they could identify his signature. They answered yes, and thereupon took the paper and subscribed it as witnesses, at a table in the room, which was back of the testator and where they were not actually seen by him, but where he could have seen them by turning his head on the pillow, which he was easily able to do. *Held*, a sufficient execution and attestation.

3. FINDING OF CHANCELLOR ON FACTS.   *Treated as a verdict.*
   Where a jury trial is waived and an issue *devisavit vel non* is submitted to the chancellor, his findings on the facts will be treated as that of a jury, and will not be disturbed, unless unsupported by evidence.

FROM the chancery court of Marshall county.

HON. J. G. HALL, Chancellor.

By the will which is contested in this case the testator, W. W. Walker, gave his estate, consisting of five or six thousand dollars, to his mother for life, and at her death it was to go to his three sisters. He had two brothers, John and Rufus. To the former he gave five dollars, and to the latter a horse. His mother died a few hours before he did, but on account of his illness he was not informed of the fact. The will was prepared by Lafayette Gatewood, husband of one of the devisees, and he was named as executor. This was some ten days before the death of the testator. It was written as directed by him, and was in accordance with his previous wishes as to the disposition of his property. While sick and away from home there was a decided change for the worse in his condition, and, because of this, his brother-in-law, the said Gatewood, was sent for. Gatewood reminded him that the will had not been signed, and, at the request of the testator, three persons were called in to witness its execution. The will was produced by Gatewood, who handed it to the testator in the presence of the witnesses, saying : " Here is your will." He was lying in bed, his head propped on pillows facing west, and there is evidence that he was in a " sort of stupor," with his eyes closed. But when spoken to he responded intelligently, and was aware of what was going on and the purpose of it. When the will was handed to him he said he could not see the lines, and called for and adjusted his spectacles, and either read or glanced over the paper. He then asked for a

book to rest his hand upon and signed the will in the presence of the witnesses. It was then taken by Gatewood, who passed around to a table east and back of the testator, and there the witnesses subscribed it. There was a conflict of evidence as to whether the testator could have seen the witnesses sign, and on some other points as stated in the opinion. The three witnesses all testified that they were not requested by the testator to sign as witnesses, and that they signed at the request of Gatewood.

The will was probated in common form, and afterwards appellants, the widow and child of the said John Walker, brother of the testator, instituted this proceeding to annul said will on two grounds: 1. Because of the testator's mental incapacity. 2. Because the will was not properly attested. The executor and the devisees were made parties defendant and answered asserting the validity of the will, and an issue *devisavit vel non* was made up and tried. From a decree in favor of defendants the contestants appealed. A further statement of the case is contained in the opinion of the court.

*J. H. Watson,* for appellants.

The facts in this case, I submit, are not sufficient to establish the due attestation of the will. The testator was in a stupor, and was only aroused by persons speaking to him. He could not have seen the attestation even if he had been in a conscious condition. Can the testimony of the subscribing witnesses be supplemented by that of a third person and thus establish the fact that he knew what they came for, and had requested that they witness the will? To answer this affirmatively would open the door for fraud, and would virtually destroy the safeguards thrown around wills and their execution by the wisdom of ages. The testator must not only be present bodily, but he must be in a conscious state. After signing, if he falls into insensibility before the witnesses sign, there is no attestation. Redf. on Wills, § 20.

The witnesses must subscribe in the presence of the testator, in order that he may have ocular evidence of the identity of the instrument attested as his will, and to prevent the fraudulent substitution of another. Mere proximity of the subscribing witnesses

is not sufficient if the signing is not in the presence of the testator. 2 Greenl. Ev., § 678. See also *Brooks* v. *Duffiel*, 23 Ga. 441; *Roberts* v. *Phillips*, 4 Ellis & Bl. 450, 30 Eng. L. & Eq. 147.

The presence contemplated by the statute is not simply the bodily presence of the testator. He must be mentally capable of recognizing, and actually conscious of the act performed before him by the subscribing witnesses in attesting the execution of the will. *Watson* v. *Pipes*, 32 Miss. 451; 26 Ga. 294; 12 B. Mon. 619; 23 N. Y. 9; 10 Ired. (N. C.) 219; 1 Jarman on Wills, 223, 224.

*J. H. Watson*, also made an oral argument.

*Fant & Fant*, for appellees.

Probate of the will was *prima facie* evidence of its validity on the trial of this issue. Code 1880, § 1969.

The presumptions are in favor of the capacity of the testator, and that the will was fairly made. *Payne* v. *Banks*, 32 Miss. 292.

The testimony shows clearly the proper attestation of the will. The contents were well understood by the testator, and the will as written was in accordance with his previously expressed wishes as to the disposition of his property. He sent for the parties to witness the execution of his will. He looked at the paper presented as his "will," stated that he could not see the lines, and called for his spectacles and read the will, or satisfied himself that it was the instrument that he had directed to be written for him. Then he called for a book, and signed in the presence of the witnesses. They examined the signature, and subscribed their names as witnesses to the will, within a few feet of the testator, who fully understood what they were doing. By simply turning his head he could have seen them, and this he was in a condition easily to do. This was sufficient. *Maynard* v. *Vinton*, 60 Am. R. 284; 1 Jarman on Wills, 78; *Watson* v. *Pipes*, 32 Miss. 451; *Baldwin* v. *Baldwin*, 59 Am. R. 673.

If regular in all other respects, the will may be good without any words of the testator declaratory of the nature of the instrument or any formal allusion to it. *Watson* v. *Pipes, supra; Hogan* v. *Grosvenor*, 43 Am. Dec. 417, and note; *Dewey* v. *Dewey*, 35 Ib.

370, and note; *Janney* v. *Thoone*, 45 Ib. 424; *Higdon's Will*, 22 Ib. 84.

Our statute requires no formal publication. If not wholly written and subscribed by the testator, attestation by two or more credible witnesses in his presence is all that is required. Code 1880, § 1262.

The chancellor sitting in the place of the jury determined the questions of fact. His decision will not be disturbed unless manifest injustice has been done.

*J. T. Fant*, for appellees, made an oral argument.

WOODS, C. J., delivered the opinion of the court.

The issue *devisavit vel non* was tried before the chancellor, the parties having waived a trial by jury, and the issue was found for the contestees. We must treat the finding as that of a jury, and decline to disturb it unless unsupported by evidence.

Briefly, the facts are that the will was prepared at the dictation of the testator about ten days before its execution, and that on that occasion the three subscribing witnesses were called in at the request and desire of the testator to attest the execution of the instrument. There is evidence to the effect that, after the witnesses had been informed of the purpose in calling them in, and had been introduced into the testator's sick chamber, the drawer of the paper handed it to the testator, with the remark, " here is your will," and that the testator, after calling for his spectacles, and putting them on, either read or glanced over the will, and signed it, thereupon, in the presence of the witnesses. There is, also, evidence that immediately after the testator had signed, he inquired of the witnesses whether they could identify his signature, and that, after examination, they declared their ability to do so. The whole evidence (with only a single variant note) declares that the instrument was at once attested by the subscribing witnesses, in the testator's room, within a few feet of him as he lay upon his bed, and that the testator could have witnessed this attestation, if he had so desired, having only to turn his head to see what was done. That he was abundantly able physically to move his head is perfectly manifest.

On this statement of fact, it plainly appears that the instrument was dictated by the testator and signed by him, with knowledge of its character and contents, as and for his will. This meets all the requirements of our statute as to publication, provided the subscribing witnesses attested by signing in the testator's presence. We have no doubt, from all the evidence, that the witnesses signed in the presence of the testator. He might readily have seen the attestation, if he wished to do so, by merely turning his head upon his pillow. "When the testator, having a mental consciousness of the act performed, in consequence of the position in which he lies upon his bed, does not actually see the attesting witnesses subscribe their names, the attestation will be good, provided he had the physical ability to change his position, and by so doing could see the proceeding." *Watson* v. *Pipes*, 32 Miss. 451. The attestation would appear, therefore, to have been altogether sufficient.

*Affirmed.*