## TYSON *v.* UTTERBACK *et al.*

(Division B. May 20, 1929. Suggestion of Error Overruled June 10, 1929.)

[122 So. 496. No. 27922.]

382

*W. I. Stone,* of Coffeeville, for appellant.

*Wall Doxey* and *Hindman Doxey*, of Holly Springs, for appellant.

*Smith & Smith,* of Holly Springs, for appellees.

*W. C. Sweat,* of Corinth, for appellees.

Argued orally by *Hindman Doxey* and *W. I. Stone,* for appellant, and by *L. A. Smith* and *W. C. Sweat,* for appellees.

GRIFFITH, J., delivered the opinion of the court.

The probate of the alleged last will and testament of Mrs. Priscilla S. Burton, late of the county of Marshall, was contested by appellees on three grounds; and the issues as made up under the direction of the court for submission to the jury may be stated in short as follows: (a) Whether the will was duly executed; (b) whether there was undue influence, and (c) whether the testatrix was of sound mind.

The paper offered as the will is dated November 17, 1923, and was signed by the testatrix and by two witnesses. It was also then and there acknowledged before Miss Bettie Edwards, a notary public. She therefore became, in law, also a witness. *Bolton* v. *Bolton,* 107 Miss. 84, 64 So. 967. The testimony of Miss Edwards is to the effect that, on the said 17th day of November, 1923, she was the office manager at the Baptist Memorial Hospital in Memphis. A few days before that date, Mrs. Burton, an elderly lady, had been admitted to the hospital as a patient, and Miss Edwards had visited her in her room socially on several occasions. On the morning of the day aforementioned about seven or eight o'clock Mrs. Tyson, a daughter of Mrs. Burton, came to the office and asked Miss Edwards to go up to Mrs. Burton's room to sign a will or a paper, the witness not being certain whether it was stated to be a will or a paper, but upon examination she saw that it was a will. Miss Edwards thereupon requested two other employees then present to go to the room with her as witnesses, and these two with Miss Edwards and Mrs. Tyson went to Mrs. Burton's room. Upon entering the room Mrs. Tyson, after asking her mother some questions as to how she felt and how she had spent the night, said to her mother, "This is Miss Edwards who has come to sign your will," but the witness is again not certain whether the word used was "will" or "paper," but gives it as her best recollection that the stated word was "will." The writing was thereupon handed to Mrs. Burton, who was in bed, and a stiff board called a chart was furnished her, upon which she could spread the paper and attach her signature. Mrs. Burton thereupon signed the paper, and it was immediately then and there signed by the two witnesses; and, it being supposed that an acknowledgment was necessary, the notary public asked the formal question: "Mrs. Burton, do you execute this paper for

the purposes therein contained and do you thoroughly understand the contents?'' To which Mrs. Burton replied ''Yes.'' This is all that the witness remembers as having been said. The witness testifies positively that Mrs. Burton was then and there of sound and competent mind.

The other two witnesses were introduced, and they both testified that their signatures and the signature of Mrs. Burton were genuine, that they saw Mrs. Burton subscribe the instrument, and that they each subscribed the same then and there as witnesses. We think it immaterial, so far as concerns the questions now before us, to pursue the testimony of the other witnesses further, except perhaps to say they had apparently forgotten practically all the details.

At the conclusion of the testimony of the three subscribing witnesses the court granted a peremptory instruction in behalf of contestants, on the ground, as we assume from the course of the record and of the argument here, that the due execution of the will had not been proved by sufficient legal evidence, and that this issue could not be established in behalf of proponents otherwise, in whole or in part, than by the attesting witnesses. The only questions before us, therefore, are whether the testimony was sufficient to go to the jury on the issue of due execution, and whether the proponents should have been cut off at the point mentioned when they were insisting on introducing further testimony, and were prepared so to do.

The argument of appellees is reducible to four contentions: (1) That the will was not published in the presence of the attesting witnesses; (2) that it is not shown that as many as two of the witnesses knew that it was a will; (3) that it is not shown that the testatrix knew it was a will, or, if so, that she knew the contents thereof; and (4) that it is not proved by as many as two

of the attesting witnesses that the testatrix was of sound mind at the time.

1. Long ago in the case of *Watson et al.* v. *Pipes,* 32 Miss. at page 467, it was held that publication of a will actually signed by the testator in the presence of the attesting witnesses is unnecessary under our statute. Said the court: ''The statute of this state, in respect to the question before us, was copied, literally, from the statute of Virginia, which was taken from the Statute of 29 Car. 2, Ch. 3. And it is settled, by authority, in England, that the formal publication of a will is unnecessary. A will may be good, under the Statute of Frauds, without any words of the testator declaratory of the nature of the instrument, or any formal recognition of it, or allusion to it. 4 Kent Com., 515, and cases cited; 2 Green. Ev., section 675, and cases cited in note 5; 1 Lomax, Ex'ors, 26. It seems, that in all of the states, in which the provisions of the Statute 29 Car. 2, in regard to wills, have been adopted, the same doctrine is recognized. 4 Kent, 514, 515; 2 Green. Ev., section 675. The rule is based upon the plain and manifest construction of the statute; we, therefore, have no hesitation in adopting it.'' The statute, as to the point in question, remains to-day the same as then, and hence the rule must remain the same. Publication is the formal declaration or acknowledgment of the testator, in the presence of the subscribing witnesses at the time of subscription, that the instrument that they are called upon to attest is his last will and testament, and is only necessary when expressly required by statute. 30 Am. & Eng. Ency. Law, p. 587; 1 Page on Wills, section 360; 1 Alexander on Wills, section 479; *Barnewall* v. *Murrell,* 108 Ala. 366, 18 So. page 838, and authorities there cited.

2. When publication in the presence of the witnesses is not required, as it is not in our state, then it follows that it is not essential to the validity of the will, when it has been signed by the testator to their personal knowl-

edge, that the witnesses should know its contents, or that they should know that it is a will. 28 R. C. L., p. 125; 30 Am. & Eng. Ency. Law, p. 596; 1 Page on Wills, section 360; 1 Alexander on Wills, section 478.

3. It follows further, as a logical consequence of the two foregoing statements of our law, that it is not essential that it shall be proved by the attesting witnesses that the testatrix knew that the paper she signed was a will, or that she knew the contents thereof. If the testator is not blind, and is not illiterate, and is not of unsound mind, his knowledge when he signs the same, in the presence of the witnesses, will be presumed. 30 Am. & Eng. Ency. Law, p. 586; 40 Cyc., pp. 1277-8, and numerous cases cited under note 77; 1 Page on Wills, page 74, and cases cited under notes 14-16; 1 Alexander on Wills, section 431. That this presumption is only *prima facie,* and may be rebutted by the contestants, is not material here, in view of the peremptory instruction granted contestants when the case had proceeded no further than the testimony of the subscribing witnesses—for to say from their testimony that the testatrix had no knowledge of the will and its contents is to indulge in conjecture, contrary to the presumption aforesaid; and this, too, in advance of a full development of the case. It is evident that the attesting witnesses to this will could not say, even if they had assumed so to say, that the testatrix had no knowledge of the will or its contents, except by way of conjecture, or at most by inference; and when it comes to drawing inferences, so long as more than one reasonable inference may be drawn, as is the case here, this belongs to the jury; and, as to conjectures, these do not belong to courts, juries, or witnesses—decrees and judgments may not be based on conjectures.

4. On the fourth point we approve the language used in *Barnewall* v. *Murrell,* 108 Ala. 381, 18 So. 838, citing *Hall's Heirs* v. *Hall's Ex'rs,* 38 Ala. 131, and *Dewey* v. *Dewey,* 1 Metc. (Mass.) 349, 35 Am. Dec. 367: "It is

undoubted law that any deficiency in the evidence of subscribing witnesses, as to the due execution or identity of the instrument, may be supplied by the evidence of other witnesses. If this was not true, the validity of wills would often depend, not upon the existence of facts rendering them valid, but upon the retentiveness of the memory of the subscribing witnesses.'' And the court continued: ''The law makes two subscribing witnesses indispensable to the formal execution of a will, but it by no means follows that the testimony of these witnesses is the only evidence by which the due execution of the will can be established. On the contrary, it is laid down as undoubted law that if, from forgetfulness, the subscribing witnesses should fail to prove the formal execution of the will, other evidence is admissible to supply the deficiency; or, if the subscribing witnesses all swear that the will was not duly executed, they may be contradicted, and the will supported by other witnesses or by circumstances.'' To the same effect is *Williams* v. *Moorehead,* 116 Miss. 658, 659, 77 So. 658; *Fatheree* v. *Lawrence,* 33 Miss. 585; see, also, 14 Ency. Ev., pp. 421-2; 40 Cyc., pp. 1302 *et seq.*; 2 Wig. Ev., section 1302; Page on Wills, section 665, *et seq.*; 1 Alexander on Wills, sections 508-511. Although it is the rule that all witnesses who are alive must be produced, if possible, *Maxwell* v. *Lake,* 127 Miss. 107, 88 So. 326, one of these witnesses is sufficient to take the case to the jury if he can and does testify to the facts necessary to show due execution under the statute, although the statute requires two attesting witnesses. 28 R. C. L., 125. In the case of *Watson* v. *Pipes, supra,* one of the necessary attesting witnesses wholly failed to make the proof, but, as one of the others did, the result of that case shows that it is not necessary that the proof shall be made by each and all the subscribing witnesses. See, also, *Williams* v. *Moorehead,* 116 Miss. at page 658, 77 So. 658, and *Green*

v. *Pearson*, 145 Miss. at page 30, 100 So. 862. And as we have already in effect said, but in order that nothing immediately next above stated may mislead, we repeat that the proof of due execution, and this includes every requisite element, may, if necessary, be made by others than any of the subscribing witnesses, although the subscribing witnesses must be produced, if possible. *Helm* v. *Sheeks*, 116 Miss. 726, 77 So. 820.

It was observed in *Watson* v. *Pipes, supra*, 32 Miss. page 467, that: "The object of the statute, in requiring that the witnesses shall subscribe their names in the presence of the testator, is, that he may have ocular evidence of the identity of the instrument attested as his will, and thus . . . prevent the fraudulent substitution of another," and we subjoin that the requirements of the statute have the further reason that the witnesses also may have present ocular evidence or the full equivalent thereof that another instrument than the one signed by the testator or at his direction in his presence shall not be substituted to the deception of the witnesses. These are the functions of attestation, namely, that the testator may know that the paper that is being attested is the exact paper which he signed, and that the witnesses may know that the paper which they are attesting is the exact paper which the testator signed or expressly directed to be signed for him, in addition to which the attestation includes the further function that the witnesses shall be reasonably satisfied that the testator is of sound and disposing mind and memory and capable of executing a will. *Smith* v. *Young*, 134 Miss. 738, 99 So. 370, 35 A. L. R. 69; *Maxwell* v. *Lake*, 127 Miss. 107, 88 So. 326; *Helm* v. *Sheeks*, 116 Miss. 731, 77 So. 820.

There is no difference in legal effect between a paper not signed at all and one signed by a person incapable of intelligent action. It would be idle therefore to attest a signature without at the same time attesting the mental

capacity of the signer to sign. Thus the aforesaid duty upon the attesting witness with respect to satisfying himself as to the mental soundness of the testator is but a corollary of the duty to see the signature made or the equivalent thereof. Being thus a duty, when the witness has seen the testator sign and the witness signs, there is the presumption which attends the acts of all those who serve in an official or *quasi*-official capacity, namely, of duty rightly performed. Moreover a presumption to the same effect is founded upon a just recognition of the moral instincts of the average normal person that he would not in any important transaction attest a signature as valid which he knows or has good reason to suspect is not valid. Upon two grounds there is, therefore, a presumption when the will is signed by the testator, and is signed by the witnesses, that the witnesses have performed their duty in the matter of satisfying themselves of the competency of the testator. As has already been pointed out in a quotation, *supra,* if this were otherwise, the validity of a will would rest, not upon the facts which give it existence, but would be reduced to a precarious and uncertain dependency upon the lives of the attesting witnesses; upon being able to obtain their testimony; upon their retaining recollection of the transaction; and, even in an occasional case, upon their remaining faithful to the truth. But the stated presumption is only a presumption, and may be overturned or supported by any competent testimony, either of the attesting witnesses or of others, that the testator was in fact of unsound mind, or of sound mind, as the case may be. The attesting witnesses are the judges of this only *prima facie,* not the sole and final judges, so that the actual facts, not the opinions, or sole testimony, of the attesting witnesses control in the final decision of this, as well as the other questions arising in the matter of due execution.

We think the conclusions we have stated in the foregoing paragraph are fully sustained by *Martin* v. *Per-*

*kins,* 56 Miss. at page 209, and that no further authority is necessary, if indeed any were necessary, for so plain a proposition. Said the court there:

"The subscribing witnesses were not willing to swear that the testator was of sound mind and memory. They would swear, however, that the paper was subscribed by the testator, in their presence, as his last will and testament, and that they attested it in his and each other's presence. They objected to the usual affidavit, because it contained the words referred to. If the devisees had been present, they might have elicited enough about the mental condition of the deceased to have satisfied the clerk that he had capacity to make a will, though these witnesses believed otherwise; more than that, they might have produced other testimony which would have removed all doubt as to his testamentary capacity.

"It by no means is true that capacity or incapacity can be proved *only* by the subscribing witnesses. They may express an *opinion,* as an expert may, whilst other witnesses generally would be confined to narratives of facts and conduct. It would have been entirely competent for the clerk to have examined other witnesses, and he might with propriety—and it would have been his duty—have admitted the paper to probate, against the opinion of the subscribing witnesses, if other testimony had satisfied him that the testator had mental capacity to make a will.

"The statute intends that, on the *ex parte* exhibition of the paper, the subscribing witnesses must be examined. They are the only competent witnesses as to the signing, publication, and attestation; but others are equally competent to speak of the mental condition."

It is true that the language of that case was addressed to an offer of probate in common form, but for the greater reason it is applicable to a contest *devisavit vel non.* The matter gets down to this: The attesting witnesses owe a duty to see that the testator has mental capacity, but

when they attest there is a presumption that they have satisfied themselves on this point. Thereafter when the will is offered for probate whether in common form or upon contest, the question of testamentary capacity is one of fact to be proved as other facts are proved, and is not concluded by the opinion of the subscribing witnesses, whether that opinion be one which the witnesses entertained at the time of the execution of the will or subsequently, or even when they have or had no opinion on the question one way or the other. There must be some direct proof of mental capacity, and the presumption herein stated does not extend to that essential fact, *Gathings* v. *Howard,* 122 Miss. 355, 84 So. 240, but the proof of this is not confined to the attesting witnesses.

All the questions above discussed have arisen out of the argument at the bar, and are involved in the record, but specifically the result of this appeal as it now stands before us may be turned upon the single concluding observation that the testimony of one of the witnesses, Miss Edwards, fully and expressly sustained every element of the statutory requirements of due execution, including the fact that the testatrix was at the time of capable mind, and this is sufficient both as a *prima-facie* case, and as against a peremptory instruction, laying aside the fact that other witnesses were ready to be offered, but were not allowed to be heard.

It is evident, as we think, that the chancellor gave an enlarged interpretation to some of the language used in *Maxwell* v. *Lake, supra,* which was a case in which the will was not signed in the presence of one of the two witnesses, nor did the testator do that which was the equivalent thereof, namely, he did not declare or otherwise specifically and definitely make known to the witness that he had signed the same, nor did the witness even see the signature of the testator when the witness signed some two or three years later. The language of an opinion must be interpreted in accordance with the facts of

the case with which the opinion is dealing. Likewise, as to the language in *Green* v. *Pearson,* 145 Miss. 23, 110 So. 862. Here, now at the bar, we have a case where no question is raised, or even suggested, but that the testatrix actually signed by her own hand the will in question, and this in the presence of every one of the witnesses, and that they then and there each and all signed as witnesses in her immediate presence; and, moreover, the testimony, at the time when the case was taken from the jury, was ample to go to the jury on the affirmative of testamentary capacity.

*Reversed and remanded.*