## KELKER, et al. *v.* JORDAN

No. 40239          October 15, 1956          89 So. 2d 858

848

*John B. Gee, R. Jess Brown,* Vicksburg, for appellants.

*Joe G. Moss,* Raymond, for appellee.

McGEHEE, C. J.

The contestants, Daisy Lee Yates Kelker and Charles Henry Yates, are the legally adopted children of Annie

Yates and Henry H. Yates, both deceased, under a decree of adoption which conferred the right of inheritance of the estate of such adoptive parents. The contestee, Sweetie Jordan, is a sister of Annie Yates, deceased, and the sole named beneficiary under last will and testament.

Henry H. Yates predeceased his wife Annie Yates, the alleged testatrix. They had no children born of their marriage, and Annie Yates died seized and possessed of certain real estate and personal property in Hinds County, Mississippi, where she and her husband had resided with their adopted children, and with whom Daisy Lee Kelker had continued to reside until their deaths.

A few weeks prior to the death of Annie Yates, her sister Sweetie Jordan carried her to the home of the latter in the City of Vicksburg, where she remained until her death. On May 9, 1955, Sweetie Jordan summoned to her home George C. Jefferson, an undertaker at Vicksburg, and represented to Jefferson that her sister Annie Yates desired to discuss with him the matter of disposing of her property in Hinds County. Jefferson testified that he advised Annie Yates, after talking with her about her affairs, that she needed a lawyer, and he procured the services of R. Jess Brown, who prepared the last will and testament which is the subject of this contest.

The testimony of some of the witnesses discloses that Annie Yates, who was sixty-seven years of age, and had been ill to some extent for about eighteen years, and that her illness had been worse during the four years immediately preceding her death on May 18, 1955; that her adopted daughter and others had arranged for her to consult a doctor at a hospital in Jackson who had advised that it might be necessary for her foot to be amputated, but that the patient returned home because of her unwillingness to have the operation if the same could be safely avoided; that thereafter her sister Sweetie Jordan went to the home of Annie Yates, had her lifted out of the house and placed her in an automobile, and carried

her to the home of the former in Vicksburg on the idea that she might be able to get her into the charity hospital there for treatment without an operation, although the patient was never placed in the charity hospital at Vicksburg but remained in the home of her sister Sweetie Jordan until her death.

The purported last will and testament was executed Monday, May 9, 1955, nine days prior to the death of the alleged testatrix. Some of the witnesses for the contestants testified that she was both physically and mentally ill on May 8, 1955, which was Mother's Day, when they visited her, and that she paid no attention to anyone and some of them said that she appeared to be in a coma. On Tuesday, May 10, 1955, several other relatives visited her and testified that she was neither physically nor mentally able to have executed a will on that date, but they did not see her on the date on which the will is alleged to have been executed. The chancellor found from conflicting evidence that more than a dozen witnesses had testified that "for a number of days prior thereto (meaning the date of the execution of the will) and thereafter until the date of her death, Annie Yates was lying flat of her back in a bed impaired of mind and body to the extent that she did not know where she was or what she was doing at any time. She was an extremely sick person and was not possessed of either the mental or physical ability to execute a last will and testament." The chancellor further stated in a finding of fact that he did not rely however upon the testimony of the witnesses for the petitioners alone for such finding, but also on the conflicting testimony of the two witnesses to the purported last will and testament, Aleas Flowers and George C. Jefferson, and that it was the opinion of the court that the witness Aleas Flowers' testimony more nearly reflects what happened at the time of the execution of the alleged will; that "her testimony shows that the instrument was executed not in the presence of the de-

ceased Annie Yates, but in a room adjacent to the room wherein Annie Yates was lying in bed, that she (the witness) signed the instrument first, not at the request of Annie Yates but at the request of lawyer Jess Brown; that George C. Jefferson, the other witness, signed it next, and that lawyer Brown signed Annie Yates' name to said document, and in addition thereto made the 'X' representing the signature of Annie Yates; that thereafter the instrument was taken to the bed of Annie Yates where she touched the pen.''

■■ It is contended here that although the chancellor found as a fact that a fraud was perpetrated upon the alleged testatrix in the procurement of the execution of the will, there was no charge of fraud in the petition filed by the contestants. But be that as it may, we are of the opinion that, as charged in the petition, the will was not executed in accordance with the requirement of Section 657, Miss. Code of 1942, since the finding of the chancellor is supported by the testimony of Aleas Flowers on cross-examination as to the manner of its execution, and which alleged facts were not specifically denied by the other subscribing witness, George C. Jefferson. One of the subscribing witnesses testified that the testatrix caused her mark to be made while lying down and the other testified that she was sitting up in the bed when she merely touched the pen, and neither of them testified that they signed it as witnesses in her presence. The chancellor believed that part of the testimony of the witness Aleas Flowers which discloses that the witnesses signed the instrument first, and in a different room from where the testatrix was in bed, and that the name of the testatrix was signed to the instrument in such other room and then carried into the room of the testatrix where she touched the pen. It is of course immaterial whether she was lying down or sitting up, but it was essential that the testatrix should have executed the will and that the witnesses should have subscribed to it in her presence.

█ █ Aside from the foregoing observations, there was ample testimony to support the finding of the chancellor that Annie Yates was in such physical and mental condition that she did not know her relatives and was not able to say anything when they went to the bedside and asked her about her condition.

The petition contesting the will alleged both physical and mental incapacity, as well as undue influence, but *we confine this decision to the question of mental incapacity.*

We are not warranted in disturbing the finding of the chancellor in this regard where there were more than a dozen witnesses testifying in support of his finding as to her condition on the day before and on the day after she is alleged to have executed the will. We are not unmindful of the rule that the test as to mental capacity to execute a valid will is the condition of the testator or testatrix at the time of its alleged execution, but in the instant case the condition of Annie Yates was a continuous one through May 9, 1955, under the facts disclosed by the testimony of the witnesses who saw her on May 8th and May 10th, 1955. The decree of the chancellor in sustaining the contest to the will on the ground of the lack of mental capacity to execute a valid will on the occasion in question is therefore affirmed.

Affirmed.

*Hall, Kyle, Arrington* and *Gillespie, JJ.,* concur.