349 So.2d 1032 (1977)
In the MATTER OF the will and Estate of Alcot JEFFERSON deceased.
Scott JEFFERSON et al.
v.
Ella MOORE, Executrix, Estate of Alcot Jefferson, deceased.
No. 49545.
Supreme Court of Mississippi.
August 31, 1977.
P. Zeb Jones, Jackson, for appellants.
Howie, Montgomery & Montjoy, Gid Montjoy, IV, Jackson, for appellee.
Before INZER, P.J., ROBERTSON and WALKER, JJ., and COFER, C.
*1033 KERMIT R. COFER, Commissioner for the Court:[1]
The Chancery Court of the First Judicial District of Hinds County, overruling objections of the contestants, entered a decree holding the will of Alcot Jefferson, deceased, duly executed, and the contestants have appealed therefrom.
The grounds of contest making up the issue devisavit vel non and submitted to the decision of the chancellor without a jury, were lack of testamentary capacity and that the instrument was not signed by the testator, and, if it was signed by another in the presence of the testator, it was not signed by the testator's express direction.
Appellants assign as error the chancellor's finding that Alcot Jefferson was of sound and disposing mind and memory and fully competent to execute his will on its date, February 12, 1975. A second error and to be hereinafter noticed was assigned, but in their assignments, appellants do not attack the chancellor's holding that the will was signed by the testator in a manner authorized by the statute.
It is this Court's view that the proof, by a clear preponderance, established the testamentary capacity of the testator at the alleged execution of the will. A review of the proof is, however, rendered unnecessary by the Court's conclusion as to the second and last assignment of error, "The Court below further erred in finding that the telephone conversation of one of the witnesses to the will constituted presence of the witness to the signing of the will."
This assignment of error was not a part of the contest, but is based upon proof as adduced in the hearing.
Attorney E.W. Montgomery, II, prepared the instrument, and caused it to be signed by the testator in a manner authorized by the statute. Sec. 91-5-1 Miss. Code Ann. (1972). He then became an attesting witness thereto, signing the document in the presence of the testator as provided by that statute. (The will was probated in common form by use of his proof as attesting witness).
When the testator and Mr. Montgomery had signed the will, Mr. Montgomery took the instrument to his and Mr. Gid Montjoy, IV's law office; Mr. Montjoy called Alcot Jefferson, told him he had a will in his hand (which Mr. Montgomery testified he had just handed to Mr. Montjoy), and asked him, the testator, if he had signed it. The chancellor summarized the activity of Mr. Montjoy thus, in his decree:
2... . That Mr. Montgomery returned to his office in the Deposit Guaranty National Bank Building in Jackson, Mississippi and informed Gid Montjoy, IV, his law partner, that the instrument exhibited to him was Alcot Jefferson's will and that Alcot Jefferson had requested that Gid Montjoy witness the same as a subscribing witness. That Mr. Montjoy then telephoned Alcot Jefferson and inquired as to whether the instrument presented was his will, and Alcot Jefferson verified the fact. Whereupon, Gid Montjoy, in the presence of the other subscribing witness, E.W. Montgomery, II, signed the same as a subscribing witness. That it is the opinion of the Court that the will was witnessed in compliance with the statute and that the telephone call constituted presence.
In his opinion on which the decree was based, the chancellor said, in part,
... The Court is going to hold that Mr. Montjoy's conversation with him over the telephone, in which he, Mr. Montjoy, states as a witness that he knew the voice of Alcot Jefferson, and that Alcot Jefferson testified to him that this was the will he had signed or executed, and that then Mr. Montjoy signed that will in the telephone presence of the deceased, the Testator.
Now, that may not be the law, Mr. Jones, and if it isn't, you will now have the opportunity to test it, but I believe *1034 under the circumstances that the will was properly executed and was the will of Alcot Jefferson ...
In the progress of the hearing, the chancellor had taken notice of the uncustomary witnessing of the will, was disturbed by the lack of attestation by both witnesses in the immediate presence of the testator and the fact that "the validity of the will will end up being based on a telephone conversation", correctly announced that in a will contest trial, the court would be bound to take note that the execution of the will was improperly accomplished, if the proof so showed, and, correctly again, proceeded to the conclusion as treating the pleadings, in respect to the attestation, as being conformed to the proof, "and that the issue is before the Court as to whether or not the will was properly signed ..."
There is no cross appeal, nor is there assertion in appellee's brief that it was improper for the court to treat the pleadings as being thus amended to conform to the proof, and that question is not now before the Court.
The issue now for consideration of this Court is as to whether, on the facts of this case, attestation by Mr. Montjoy was in the presence of the testator. The answer must be in the negative.
The pertinent part of Section 91-5-1, Mississippi Code Annotated (1972), governing the execution of wills says,
... Moreover, if not wholly written and subscribed by himself or herself, it shall be attested by two (2) or more credible witnesses in the presence of the testator or testatrix.
In the early case of Watson v. Pipes, 32 Miss. 451 (1856), it was held,
The object of the statute, in requiring that the witnesses shall subscribe their names in the presence of the testator, is, that he may have ocular evidence of the identity of the instrument attested as his will, and thus to prevent the fraudulent substitution of another.
The presence contemplated by the statute, is not simply the bodily presence of the testator; it is essential, that he be also mentally capable of recognizing and actually conscious of the act performed before him. In the meaning of the law, to be corporeally present, it is not indispensable that the testator and the witnesses should be in the same room, or even in the same house, where the attestation is made. An attestation made in the same room with the testator is prima facie good. And where the attestation is shown to have taken place in a different apartment, it is prima facie bad. But this presumption, in either case, will yield to positive proof. And it is settled by all the authorities, that it is not absolutely essential that the testator should actually see, but if the attestation be shown to have been made within the scope of the testator's view from his actual position, it will be sufficient. For example, when the testator, having a mental consciousness of the act which is performed in consequence of the position in which he lies upon his bed, does not actually see the attesting witnesses subscribe their names, the attestation will be good, provided he had the physical ability to change his position, and by doing so could have seen the proceeding. [32 Miss. at pages 467-8].
The Watson case, supra, was cited with approval and quoted in Walker v. Walker, 67 Miss. 529, 7 So. 491 (1890), wherein the Court said:
... The whole evidence (with only a single variant note) declares that the instrument was at once attested by the subscribing witnesses, in the testator's room, within a few feet of him as he lay upon his bed, and that the testator could have witnessed the attestation, if he had so desired, having only to turn his head to see what was done. That he was abundantly able physically to move his head is perfectly manifest.
On this statement of fact, it plainly appears that the instrument was dictated by the testator and signed by him, with knowledge of its character and contents, as and for his will. This meets all the requirements of our statute as to publication, *1035 provided the subscribing witnesses attested by signing in the testator's presence. We have no doubt, from all the evidence, that the witnesses signed in the presence of the testator. He might readily have seen the attestation, if he wished to do so, by merely turning his head upon his pillow. "When the testator, having a mental consciousness of the act performed in consequence of the position in which he lies upon his bed, does not actually see the attesting witnesses subscribe their names, the attestation will be good, provided he had the physical ability to change his position and by so doing, could see the proceeding." Watson v. Pipes, 32 Miss. 451. The attestation would appear, therefore, to have been altogether sufficient. [67 Miss. at pages 533-4, 7 So. at page 491].
In Gordon v. Parker, 139 Miss. 334, 104 So. 77 (1925), the Court noted the fact that Mississippi has adopted a liberal construction of the statute of wills favorable to their being upheld insofar as execution and attendant formalities are concerned.
The Supreme Court, in Tyson v. Utterback, et al., 154 Miss. 381, 122 So. 496 (1929), held:
It was observed in Watson v. Pipes, supra, 32 Miss. page 467, that: "The object of the statute, in requiring that the witnesses shall subscribe their names in the presence of the testator, is, that he may have ocular evidence of the identity of the instrument attested as his will and thus ... prevent the fraudulent substitution of another," and we subjoin that the requirements of the statute have the further reason that the witnesses also may have present ocular evidence or the full equivalent thereof that another instrument than the one signed by the testator or at his direction in his presence shall not be substituted to the deception of the witnesses. These are the functions of attestation, namely, that the testator may know that the paper that is being attested is the exact paper which he signed, and that the witnesses may know that the paper which they are attesting is the exact paper which the testator signed or expressly directed to be signed for him, in addition to which the attestation includes the further function that the witnesses shall be reasonably satisfied that the testator is of sound and disposing mind and memory and capable of executing a will. Smith v. Young, 134 Miss. 738, 99 So. 370, 35 A.L.R. 69; Maxwell v. Lake, 127 Miss. 107, 88 So. 326; Helm v. Sheeks, 116 Miss. 731, 77 So. 820. [154 Miss. page 392, 122 So. at page 499].
The announcement is made in Maxwell v. Lake et al., 127 Miss. 107, 88 So. 326 (1921), that:
Witnesses are not only to identify the paper which has been signed by the testator, but they are to prove the execution of the will and the capacity of the testator to execute it, and, in the case of their death, their signatures to the will, when proven, are evidence both as to the signing of the will, and as to the capacity of the testator. [127 Miss. at 113, 88 So. at 328].
In Kelker et al. v. Jordan, 228 Miss. 847, 89 So.2d 858 (1956), wherein the witnesses to the will signed as such in a different room from that in which the alleged testatrix lay, at the request of an attorney, who signed the alleged testatrix' name to the will, made an "X" for her signature, and thereafter the instrument was taken to her bed where she touched the pen, the Court observed, "It is of course immaterial whether she was lying down or sitting up, but it was essential that the testatrix should have executed the will and that the witnesses should have subscribed to it in her presence." [228 Miss. at 852, 89 So.2d at 860].
Wilson v. Polite, 218 So.2d 843 (Miss. 1969), involved a holographic will, but the following is in point here:
(2) It is a requisite to a valid will that it be executed as prescribed by statute. 94 C.J.S. Wills § 127(1), p. 898 (1956).
(3) No matter how earnestly one may desire and intend to make a will, a paper, although fully intended by the writer to be a will, is ineffective and invalid unless its execution meets statutory requirements.

*1036 (4) The purpose of statutes prescribing formalities for the execution of wills is not for the purpose of restricting the power of testator to dispose of his property, but it is to guard against mistakes, impositions, undue influences, fraud, deception, etc., which would divert the property of the testator from those intended by him or her to inherit same. The formalities are for the testator's protection also, as well as the beneficiaries. [218 So.2d at 849].
Later in the same opinion, the Court said:
The legislature passed the statute advising people how to prepare their wills. It conferred upon the citizens of the State the privilege of devising their property to others than legal heirs, but this power or privilege was conditioned for the protection of the testator and the beneficiaries upon the procedure prescribed by the statute. The legislature said that the person desiring to make a will must follow this procedure. It did not give this Court or any court the right to waive the requirement as announced by said statutes. It did not say that this Court or any court could eliminate from the instrument attempted to be probated any words (and this is especially applicable to holographic wills) in order to do that which the writer had failed to do, to wit: Make a will. [218 So.2d at 855].
The cases cited and quoted from hereinbefore abundantly hold that the purpose of signing by the attesting witnesses in the presence of the testator is that the testator will know that the witnesses are attesting the testator's will and not another document; that the witnesses will know the same; these reasons being to avoid imposition or fraud on either the testator or the witnesses by substitution of another will in place of that signed by the testator; and that the witnesses will be reasonably satisfied that the testator is of sound and disposing mind and capable of making a will.
The record reveals that the testator signed the will in a manner approved by the statute, in his home at 181 East Bell Street, in Jackson; that Mr. Montjoy, in the Montgomery-Montjoy law office in the Deposit Guaranty Plaza Building, called the testator by telephone, and then, in his office, became an attesting witness to the document, no effort being shown that his signing was in the presence of the testator, or at a place where the testator could have seen the act of signing had he desired.
The decisions and quotations from decisions herein permit of no conclusion that a witness may attest a will out of the presence of the testator by ascertaining by telephone conversation with the testator, that he had signed that same will, if the testator could know by telephone that it was the same will, and that the testator had testamentary capacity, if, indeed, in such a case, it could be said satisfactorily that the witness knew that he was talking to the testator, and not to another whose voice the witness regarded as that of the testator.
The attestation by Mr. Montjoy did not comply with the statutory requirement that he attest the will in the presence of the testator.
For the reasons assigned, the decree establishing the will is reversed and judgment for the contestants will be entered here.
REVERSED AND RENDERED.
PATTERSON, C.J., INZER and SMITH, P. JJ., and ROBERTSON, SUGG, WALKER, BROOM, LEE and BOWLING, JJ., concur.
NOTES
[1] pursuant to Chapter 430, Laws of 1976. The above opinion is adopted as the opinion of the Court.