[Cite as *Whitacre v. Crowe*, 2012-Ohio-2981.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF MEDINA | ) | |

SHAWN WHITACRE, et al.

    Appellees

    v.

MICHAEL A. CROWE, et al.

    Appellants

C.A. No.     11CA0019-M

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF MEDINA, OHIO
CASE No.    2010 07 CA 00019

DECISION AND JOURNAL ENTRY

Dated: June 29, 2012

CARR, Judge.

{¶1} Appellant, Victoria Hobson, appeals the judgment of the Medina County Court of Common Pleas, Probate Division. This Court affirms.

I.

{¶2} Kay Whitacre had five adult children at the time of her death. Her will was admitted to probate. Her daughter Victoria was named as the sole beneficiary, while her son Michael was named as executor. Kay's three remaining children, Shawn, Angie, and Nick, were not mentioned in the will. Subsequently, Shawn, Angie, and Nick filed a complaint to contest the will. They later moved for summary judgment. Victoria and Michael responded in opposition. The trial court granted the plaintiffs' motion for summary judgment, concluded that Kay's will was not executed pursuant to the formalities required in R.C. 2107.03, and revoked an earlier order admitting the will to probate. Victoria appealed, raising three interrelated assignments of error for review.

II.

## ASSIGNMENT OF ERROR I

THE TRIAL COURT ERRED IN FINDING THAT THE EXECUTION OF THE WILL DID NOT MEET THE FORMALITIES REQUIRED UNDER []R.C. 2107.03.

## ASSIGNMENT OF ERROR II

THE TRIAL COURT ERRED IN GRANTING PLAINTIFF/APPELLEE'S MOTION FOR SUMMARY JUDGMENT FINDING THAT THE WITNESSES WERE NOT IN THE CONSCIOUS PRESENCE OF KAY WHITACRE, THE TESTATOR.

## ASSIGNMENT OF ERROR III

THE TRIAL COURT ERRED IN REVOKING ITS PRIOR ORDER ADMITTING THE PROPERLY EXECUTED WILL TO PROBATE.

{¶3} Victoria challenges the trial court's granting of summary judgment in favor of the plaintiffs which resulted in the court's revocation of its prior order admitting Kay's will to probate. Her arguments are not persuasive.

{¶4} This Court reviews an award of summary judgment de novo. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105 (1996). This Court applies the same standard as the trial court, viewing the facts in the case in the light most favorable to the non-moving party and resolving any doubt in favor of the non-moving party. *Viock v. Stowe-Woodward Co.*, 13 Ohio App.3d 7, 12 (6th Dist.1983).

{¶5} Pursuant to Civ.R. 56(C), summary judgment is proper if:

No genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party.

*Temple v. Wean United, Inc.*, 50 Ohio St.2d 317, 327 (1977).

**{¶6}** To prevail on a motion for summary judgment, the party moving for summary judgment must be able to point to evidentiary materials that show that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. *Dresher v. Burt*, 75 Ohio St.3d 280, 293 (1996). Once a moving party satisfies its burden of supporting its motion for summary judgment with sufficient and acceptable evidence pursuant to Civ.R. 56(C), Civ.R. 56(E) provides that the non-moving party may not rest upon the mere allegations or denials of the moving party's pleadings. Rather, the non-moving party has a reciprocal burden of responding by setting forth specific facts, demonstrating that a "genuine triable issue" exists to be litigated for trial. *State ex rel. Zimmerman v. Tompkins*, 75 Ohio St.3d 447, 449 (1996).

**{¶7}** The non-moving party's reciprocal burden does not arise until after the moving party has met its initial evidentiary burden. To do so, the moving party must set forth evidence of the limited types enumerated in Civ.R. 56(C), specifically, "the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact[.]" Civ.R. 56(C) further provides that "[n]o evidence or stipulation may be considered except as stated in this rule."

**{¶8}** R.C. 2107.18 provides that "[t]he probate court shall admit a will to probate if * * * the execution of the will complies with the law in force at the time of the execution of the will in the jurisdiction in which it was executed, with the law in force in this state at the time of the death of the testator, or with the law in force in the jurisdiction in which the testator was domiciled at the time of the testator's death."

{¶9}    Kay purported to execute her will in Ohio on May 14, 2010.  The applicable version of R.C. 2107.03, in effect at both the time of the execution of the will and at the time of Kay's death, states:

> Except oral wills, every last will and testament shall be in writing, but may be handwritten or typewritten.  The will shall be signed at the end by the testator making it or by some other person in the testator's conscious presence and at the testator's express direction, and be attested and subscribed in the conscious presence of the testator, by two or more competent witnesses, who saw the testator subscribe, or heard the testator acknowledge the testator's signature.
>
> For purposes of this section, "conscious presence" means within the range of any of the testator's senses, excluding the sense of sight or sound that is sensed by telephonic, electronic, or other distant communication.

{¶10} In their motion for summary judgment, the plaintiffs challenged the valid execution of Kay's will on two grounds, specifically, (1) that Kay did not sign her will in the conscious presence of the witnesses because the witnesses viewed the signing from another room by way of a video monitor, and (2) that the witnesses did not attest and subscribe the will in the conscious presence of the testator.  In its order granting summary judgment to the plaintiffs, the trial court found that the witnesses "technically" never saw Kay sign her will because they viewed the event on a monitor, and that the witnesses were not in the conscious presence of Kay when she signed her will.  The trial court concluded that the execution of the will did not meet the formal requirements of R.C. 2107.03 and it, therefore, revoked its prior order admitting the will to probate.  Although the trial court's findings are inartfully crafted, this Court concludes that the trial court properly granted summary judgment in favor of Shawn, Angie, and Nick, and therefore properly revoked its prior order admitting Kay's will to probate.

{¶11} No party argues that the indecipherable scribble on the will does not constitute Kay's signature, and we do not address that matter further.

{¶12}  Victoria argues that the trial court erred because genuine issues of material fact existed regarding whether the two witnesses attested and subscribed the will in the conscious presence of the testator.  Because that issue is dispositive of the appeal, we confine our analysis to that issue.

{¶13}  Subscription is "the physical act of affixing a signature for purposes of identification."  *Jackson v. Estate of Henderson*, 8th Dist. No. 93231, 2010-Ohio-3084, ¶ 18.  Attestation, a separate and distinct act from subscription, "is the act by which the subscribing witnesses hear the testator acknowledge his signature or see him sign the document in their presence."  *Id.*; *see also Timberlake v. Sayre*, 4th Dist. No. 09CA3269, 2009-Ohio-6005, ¶ 26.

{¶14}  By the plain language of R.C. 2107.03, the witnesses attesting and subscribing the will must do so "within the range of any of the testator's senses," which expressly excludes sights and sounds relayed through electronic means.  The evidence appended to both the motion for summary judgment and response in opposition clearly establishes that the monitor involved in this situation worked one way in that it only allowed the witnesses to see and hear Kay, while Kay could not see and hear the witnesses via any electronic means.  To the extent, then, that any party has argued that the use of the audio/video monitor precluded the witnesses from being in Kay's "conscious presence," such an argument is a red herring.

{¶15}  The issue of what satisfies the requirement of "conscious presence" is one of first impression in Ohio.  Historically, however, other jurisdictions which required witnesses to attest and subscribe the will in the presence of the testator interpreted "presence" to mean "conscious presence."  *See, e.g., In re Estate of Holden*, 113 N.W.2d 87 (Minn.1962); *In re Demaris' Estate*, 110 P.2d 571, 581 (Or.1941); *Calkins v. Calkins*, 75 N.E. 182, 183-184 (Ill.1905); *Watson v. Pipes*, 32 Miss. 451 (1856); *Nock v. Nock's Exrs.*, 51 Va. 106 (1853); *Nichols v. Rowan*, 422

S.W.2d 21, 24 (Tex.Civ.App.1967). The test has been referred to as a "mental apprehension test" and is stated as follows:

> "When a testator is not prevented by physical infirmities from seeing and hearing what goes on around him, it is the general, if not universal, rule that his will is attested in his presence if he understands and is conscious of what the witnesses are doing when they write their names, and can, if he is so disposed, readily change his position so that he can see and hear what they do and say. * * * In other words, if he has knowledge of their presence, and can, if he is so disposed, readily see them write their names, the will is attested in his presence, even if he does not see them do it, and could not without some slight physical exertion. It is not necessary that he should actually see the witnesses, for them to be in his presence. They are in his presence whenever they are so near him that he is conscious of where they are and of what they are doing, through any of his senses, and are where he can readily see them if he is so disposed. The test, therefore, to determine whether the will of a person who has the use of all his faculties is attested in his presence, is to inquire whether he understood what the witnesses were doing when they affixed their names to his will, and could, if he had been so disposed, readily have seen them do it."

*Demaris* at 582, quoting *Healey v. Bartlett*, 59 A. 617, 618 (N.H.1904).

**{¶16}** In *In re Estate of Holden*, 113 N.W.2d at 92-93, the Supreme Court of Minnesota concluded that witnesses signing the will while standing eight feet away in the doorway to the testator's room were in the testator's "range of vision" and, therefore, within his conscious presence. In *Nock*, 51 Va. at 126, the Supreme Court of Appeals of Virginia concluded that the witnesses who attested the will did so in the conscious presence of the testator even though they were in another room, 16-17 feet away, and the testator could not from his position see the witnesses' forearms, writing hands, or the will itself without changing position. The court concluded that the conscious presence test was met, however, because the testator could have seen the witnesses attesting the will merely by changing his position. *Id.*

**{¶17}** California has also construed the presence requirement by applying the "conscious presence" test. *In re Tracy's Estate*, 182 P.2d 336, 337 (Cal.App.1947). The *Tracy* court, citing a long history of cases from various states, set out the following elements to

establish conscious presence, where the testator cannot actually view the witnesses' signing: "(1) the witnesses must sign within the testator's hearing, (2) the testator must know what is being done, and (3) the signing by the witnesses and the testator must constitute one continuous transaction." *Id.* In *Tracy*, the witnesses signed the will in another room 25 feet away and, although the testator could not see them, she could hear the witnesses' conversation evidencing their contemporaneous signing. Given the timing of the witnesses' signatures immediately after the testator's and the testator's ability to hear the witnesses and understand by their conversation that they were attesting her will, the court concluded that the will was properly executed. *Id.*

{¶18} The Supreme Court of Mississippi explained the rationale behind the conscious presence test. *In re Estate of Jefferson*, 349 So.2d 1032 (Miss.1977). The *Jefferson* court wrote that "the purpose of signing by the attesting witnesses in the presence of the testator is that the testator will know that the witnesses are attesting the testator's will and not another document; that the witnesses will know the same; these reasons being to avoid imposition or fraud on either the testator or the witnesses by substitution of another will in place of that signed by the testator; and that the witnesses will be reasonably satisfied that the testator is of sound and disposing mind and capable of making a will." *Id.* at 1036. In that case, the high court concluded that a witness who telephoned the testator and informed him that he was then signing and attesting the testator's will was not in the conscious presence of the testator.

{¶19} More recently, the Supreme Court of New Hampshire relied on the conscious presence test as enunciated in *Healey*, *supra*, and concluded that the witnesses had not attested the will in the testator's presence. *In re Estate of Fischer*, 886 A.2d 996 (N.H. 2005). In *Fischer*, the testatrix was bedridden with cancer. After signing her will in her bed in front of the witnesses, the witnesses signed the will on the porch. The court concluded that there was no

evidence in the record that the testatrix could have readily seen or heard what the witnesses were doing but for her infirmities or that they were so near the testatrix that she was conscious of their actions when they signed the will. *Id.* at 999. Moreover, the high court concluded that the witnesses' signing in the presence of the testatrix' attorney was not adequate to meet the statutory requirement. *Id.* at 1000.

{¶20} Based on our review of the considerations long recognized throughout the country, we adopt a "conscious presence" test in line with historical precedent which requires that the subscribing and attesting witnesses be in the testator's range of vision or that the testator hear and understand that the witnesses are subscribing and attesting the will at the time they are doing so.

{¶21} Sara White and Joseph Reich were asked to witness the execution of Kay's will. In this case, both Ms. White and Mr. Reich testified during their depositions that Kay, who was on another floor of the home when she signed her will, could not see them from either bedroom. In fact, Ms. White understood that Kay did not want the witnesses in the same room with her because she did not want any strangers to see her in her state of illness. Ms. White testified that she had no knowledge about whether Kay could hear the witnesses on the floor below her. Both witnesses testified that they signed the will within mere feet of one another but that Kay did not see the witnesses sign from upstairs. Mr. Reich further testified that no one asked him to communicate in any way with Kay that day regarding her understanding of the will.

{¶22} Based on our review of the evidence submitted by Shawn, Angie, and Nick in support of their motion for summary judgment, this Court concludes that they met their initial burden of presenting evidence to demonstrate that there was no genuine issue of material fact and that they were entitled to judgment as a matter of law. The plaintiffs presented evidence that

the witnesses were not in Kay's range of vision when they subscribed and attested the will and further that she could not hear what they were doing and, therefore, had no understanding that the witnesses were signing the will.

{¶23} In support of her reciprocal burden, Victoria appended her affidavit in which she averred that "the voices of the witnesses and sounds they were making moving around in the living room were clearly audible and within the sound of my mother's ears, being only several yards away and directly below her in the living room[.]" She further averred that Michael took the will from Kay downstairs to the witnesses and that "they had a discussion that could be heard in my mother's upstairs bedroom while they were signing as witnesses[.]" Victoria also appended the affidavit of Ms. White who averred that "[d]ue to our close proximity, Kay Whitacre could hear me talking with her son and daughter, as well as the other witness, Joseph Reich, and I believe she could hear our movements about the living room, so she was fully aware of our presence[.]"

{¶24} Based on our review of the evidence, we conclude that Victoria did not meet her reciprocal burden of responding by setting forth specific facts, demonstrating that a "genuine triable issue" exists to be litigated for trial. *Tompkins*, 75 Ohio St.3d 447 at 449. Although she presented evidence that Kay could hear conversations and movements in the downstairs living room, she presented no evidence regarding the substance of any of those conversations or that Kay was aware that the witnesses were subscribing and attesting her will at the time they were doing so. Accordingly, the trial court did not err when it found that the will was not executed in compliance with the requirements of R.C. 2107.03, and when it therefore revoked its prior order admitting the will to probate. Victoria's assignments of error are overruled.

III.

**{¶25}** Victoria's assignments of error are overruled. The judgment of the Medina County Court of Common Pleas, Probate Division, is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Medina, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellants.

DONNA J. CARR
FOR THE COURT

DICKINSON, J.
CONCURS.

BELFANCE, P. J.
DISSENTING.

{¶26} I respectfully dissent from the judgment of the majority, as I would conclude there is a genuine dispute of material fact precluding summary judgment.

{¶27} R.C. 2107.03 states in part that the will shall "be attested and subscribed in the conscious presence of the testator, by two or more competent witnesses, who saw the testator subscribe, or heard the testator acknowledge the testator's signature." The statute goes on to define the phrase conscious presence as "within the range of any of the testator's senses, excluding the sense of sight or sound that is sensed by telephonic, electronic, or other distant communication." R.C. 2107.03. Because that phrase has been defined by the legislature, I would rely first and primarily on that definition in determining whether there was a genuine dispute of material fact with respect to whether the will was attested and subscribed in Kay's conscious presence.

{¶28} Viewing the evidence in a light most favorable to Victoria, I would conclude that she met her reciprocal burden and demonstrated that a genuine dispute of material fact exists with respect to whether the will was attested and subscribed in Kay's conscious presence. While I do not dispute that Victoria's affidavit is somewhat ambiguous, this Court is required to resolve that ambiguity in favor of Victoria. *See Garner v. Robart,* 9th Dist. No. 25427, 2011-Ohio-1519, ¶ 8. Victoria's affidavit states, inter alia, that "the voices of the witnesses and sounds they were making moving around in the living room were clearly audible and within the sound of [her] mother's ears * * *[,]" that the fan was turned off "so the sounds of the witnesses on the first floor were clearly heard by her," and, that, at the time the witnesses were going to sign the will the discussion the witnesses were having "could be heard in [Kay's] bedroom while [the witnesses] were signing * * *." In addition, Victoria's affidavit indicates that the doors to the

upstairs rooms where Kay was at were kept open and that Kay was "not more than 12-15 feet[]" from where the witnesses were located. Viewing this evidence in a light most favorable to Victoria, it could be said that the witnesses attested and subscribed to the will in the conscious presence of Kay, as the witnesses were within range of her hearing. *See* R.C. 2107.03. Accordingly, I would conclude that the movant was not entitled to summary judgment.

APPEARANCES:

LAURA M. FAUST and RONALD B. LEE, Attorneys at Law, for Appellants.

HAL BOWERS, Attorney at Law, for Appellants.

CLIFFORD C. MASCH, LEON A. WEISS, and FRANKLIN C. MALEMUD, Attorneys at Law, for Appellees.